**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
GENOMETRICA RESEARCH INC., and THE
RESEARCH FOUNDATION OF THE STATE
UNIVERSITY OF NEW YORK, pursuant to Art.
VII of its July 1, 1999 Exclusive License
Agreement with GENOMETRICA RESEARCH
INC.,

       Plaintiffs,                              CASE NO.: 11-CV-5802(ADS)(AKT)

v.

BORIS GORBOVITSKI, VERA GORBOVITSKI
a/k/a VERA GORFINKEL, and ADVANCED
BIOMEDICAL MACHINES INC.

       Defendants.
----------------------------------------------------------X

## STIPULATED ORDER ESTABLISHING PROTOCOL FOR ELECTRONIC DISCOVERY

After conferring on these matters, the Parties hereby propose to the Court an agreed protocol for electronic discovery. Accordingly, for good cause shown,

**IT IS HEREBY ORDERED:**

**A.   DEFINITIONS**

    1.    "Litigation" means the case captioned *Genometrica Research, et al. v. Gorbovitski, et al.*, 11-CV-5802(ADS)(AKT).

    2.    "Electronically Stored Information" or "ESI" carries the meaning provided by Fed. R. Civ. P. 34(a)(1)(A).

    3.    "Document" carries the meaning provided by Fed. R. Civ. P. 34(a)(1)(A) and thus includes both ESI and Paper Discovery (defined below).

    4.    "Paper Discovery" means any Document or thing discoverable under Fed. R.

1

Civ. P. 26(b)(1) and Fed. R. Civ. P. 34(a)(1)(A) that is not ESI.

5. "E-mail" or "electronic mail" means an electronic means for communicating written information through structured data applications (*i.e.*, e-mail client software) that can send, store, process, and receive information.

6. "Format" means the internal structure of an electronic file which defines the way it is stored and accessed.

7. "Native Format" means the Format of ESI in the application in which such ESI was originally created.

8. "Party" or "Parties" means Plaintiff and Defendants (individually or collectively).

9. "Defendant Group" means two Defendants having a parent-subsidiary relationship or having a common parent company.

10. "Producing Party" means a Party that produces Documents.

11. "Receiving Party" means a Party to whom Documents are produced.

12. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

13. "JPEG" refers to the Joint Photographic Experts Group's file format for storing graphic images using a compression algorithm.

14. "PDF" refers to Portable Data Format file format for document representation.

15. "Metadata" refers to (a) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, and (b) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

**B.    SCOPE**

1.    The procedures and protocols set forth in this Stipulated Order shall govern the production of Documents between the Parties in the Litigation. This Order incorporates the ESI provisions of Rules 26, 34, and 37 of the Federal Rules of Civil Procedure. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

2.    The Parties shall not be obligated under this Stipulated Order to produce any ESI or Paper Discovery that is no longer within their possession, custody, or control (*e.g.*, lost or deleted) as a result of the routine, good-faith operation of an electronic information system or as a result of a Party's document retention or management policy, the ordinary course of business, or a Party's manual procedures for the handling of ESI or Paper Discovery, unless the Party requesting such ESI or Paper Discovery establishes that there is good cause to believe that the Party from whom such ESI or Paper Discovery is being requested intentionally, recklessly or negligently failed to preserve, deleted, or destroyed the ESI or Paper Discovery while under an obligation to retain it. The determination of whether such good cause exists will be made by the Magistrate Judge for the Litigation under Fed. R. Civ. P. 37(e) upon written submissions to, and/or oral arguments made at a hearing before, the Magistrate Judge for the Litigation. Any determination of sanctions based on a party's intentional, reckless or negligent failure to preserve, deletion, or destruction of the ESI or Paper Discovery while under an obligation to retain it will be determined by the District Judge.

3.    Notwithstanding anything to the contrary herein, the following Documents are not

3

discoverable in the Litigation except upon a showing of good cause as may be determined by the Magistrate Judge for the Litigation:

    a. Back-up tapes or other long-term, archival storage media. If a Party requests that such long-term storage media be searched for a Document that is not cumulative of ESI stored in active media or that is not available as Paper Discovery, the parties agree to meet and confer in good faith regarding the request.

    b. Temporary data stored in a computer's random access memory or RAM.

4.    The Parties shall meet and confer in good faith to resolve any disputes that arise under this Stipulated Order. If the Parties cannot reach agreement on a disputed matter, they shall submit the matter to the Magistrate Judge for the Litigation.

**C.    PRODUCTION FORMAT**

1.    **ESI Production Format**: Except as provided in Paragraphs C.1 and C.8, ESI shall be produced in commercial image formats (*e.g.*, TIFF, JPEG or PDF). With respect to E-mail, the commercial image formats shall contain: (1) to; (2) from; (3) cc; (4); bcc; (5) conversation index; (6) subject; (7) body; (8) attachments, and (9) date sent.

2.    **Production of Paper Discovery**: At the discretion of the Producing Party, Paper Discovery may be produced in electronic form. Paper Discovery produced in electronic form need not be rendered text searchable via Optical Character Recognition ("OCR") or other means by the Producing Party. Nor is there any obligation to produce metadata fields associated with such Documents, except that such Documents shall be produced in the manner in which they were kept in the usual course of business, including existing identification of file labels, folders, or other means of identification, source or grouping. A Party need not produce a non-electronic

4

duplicate of any Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and a showing of good cause (for example, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

3. **Appearance and Content**: Subject to any necessary redaction, each Document's image file shall contain the same information and same physical representation as the Document did in its original format, whether paper or electronic.

4. **Document Unitization**: If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party.

5. **Document Numbering for Commercial Image Formats**: Each page of a document produced in a commercial image file format shall have a legible, unique alphanumeric identifier ("Document Number") not less than six (6) digits electronically endorsed onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (for example, "BETA 0000000"). Plaintiff and each Defendant or each Defendant Group shall use a unique means of identifying the Producing Party.

8. **Production of ESI in Native Format**: As an exception, and should production of a Document in a commercial image file format be impracticable or unreasonable, the Producing Party shall have the option of producing such Document in Native Format consistent with the 2006 Amendments to Rule 34 of the Federal Rules of Civil Procedure. If doing so, the Producing Party should collect and produce Documents in Native Format in a manner that preserves the

integrity of the files. In all other instances, after initial production of ESI in TIFF, JPEG or PDF, a party wanting to receive a Native Format copy of a Document already produced, may request for production of that ESI in its Native Format. No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document before its collection.

9. **Native File Exceptions**: Notwithstanding Paragraph C.1 or C.7, if a Producing Party produces video, animation, or audio files, such Documents shall be produced in their Native Format. If a Producing Party produces software code or spreadsheet files (Excel), such information must be produced in its Native Format.

9. **Relational Databases**: Documents such as "relational databases" portrayed in structured electronic databases or files (excluding E-mail) shall be produced in a format that allows for the review of data elements contained therein subject to this Order. The parties agree to employ commercially reasonable efforts to provide reasonably detailed accompanying documentation explaining the Documents' content and format including but not limited to field level schemas for the exported data elements. Some acceptable formats include: (a) XML file(s); (b) CSV file(s); (c) fixed or variable length ASCII delimited file(s); or excel files(s).

10. **Production Media**: The Producing Party shall produce images of Documents on external hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party and the Document Number ranges of the Documents in that production (for example, "BetaNet Production, BETA0000123 -BETA0000456").

11. **Original Documents**: Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain Native Format copies of all ESI produced in the Litigation and

6

original paper copies for all Paper Discovery produced in the Litigation.

13. **ESI of Limited Accessibility**: If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, an estimate of the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (for example, the type of system used to store the ESI), and where such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Judge for the Litigation, who shall determine what burdens may be imposed upon the Producing or Receiving Parties to resolve the dispute and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

### D. ADDITIONAL ISSUES

1. **English Language**: If any Document exists in more than one language, the Document shall be produced in English, if available. If no English version of a Document is available, the Producing Party does not have an obligation to produce an English translation of that Document and does not have an obligation to render that Document text-searchable via OCR or other means.

2. **Protective Order**: The terms of any Stipulated Discovery Confidentiality Order filed with the Court governing the inadvertent production of privileged and/or work product information also govern all productions made pursuant to this Stipulated Order.

Case 2:11-cv-05802-PKC-AKT Document 26 Filed 04/23/12 Page 8 of 9 PageID #: 685
Case 2:11-cv-05802-ADS-AKT Document 22-1 Filed 04/18/12 Page 9 of 10 PageID #: 617

Agreed to this _____ day of April, 2012:

                        PLAINTIFFS GENOMETRICA RESEARCH INC., and THE RESEARCH FOUNDATION OF THE STATE UNIVERSITY OF NEW YORK, pursuant to Art. VII of its July 1, 1999 Exclusive License Agreement with GENOMETRICA RESEARCH INC.,

By: _____
Panagiota Betty Tufariello, Esq.
INTELLECTULAW,
THE LAW OFFICES OF P.B. TUFARIELLO, P.C.
25 Little Harbor Road
Mount Sinai, NY 11766
Telephone: (631) 476-8734
Facsimile: (631) 476-8737
E-mail: betty@intellectulaw.com

Robert Kenney, Esq.
Nicholas B. Malito, Esq.
HOFHEIMER GARTLIR & GROSS, LLP
530 Fifth Avenue
New York, New York 10036
Telephone: (212) 818-9000
Facsimile: (212) 869-4930
E-mail: rkenney@hgg.com
       nmalito@hgg.com

DEFENDANTS BORIS GORBOVITSKI, VERA GORBOVITSKI a/k/a VERA GORFINKEL, and ADVANCED BIOMEDICAL MACHINES INC

By: _____
Arthur D. Morrison, Esq.
11 Skyline Drive
Hawthorne, New York 10532
Telephone: (914) 592-8282
Facsimile: (914) 592-3482
E-mail: akatz@xand.com

William V. Rapp, Esq.
85 River Road
Scarborough, New York 10510
Telephone: (914) 945-0630
Facsimile: (914) 923-1416
E-mail: wrapp@law.pace.edu

SO ORDERED.

SIGNED this _____ day of _____, 2012.

HON. A. KATHLEEN TOMLINSON, U.S.M.J.

**SO ORDERED**

/s/ A. Kathleen Tomlinson

A. Kathleen Tomlinson
United States Magistrate Judge
Date: April 23, 2012
Central Islip, N.Y.

9