1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2

3    ----------------------------------X
                                       :
4    GENOMETRICA RESEARCH INC.,        :
                                       :   11-CV-5802 (ADS)
5                   Plaintiff,         :
                                       :
6              v.                      :
                                       :   100 Federal Plaza
7    GORBOVITSKI, et al.,              :   Central Islip, New York
                                       :
8                                      :   June 28, 2012
                    Defendants.        :
9    ----------------------------------X

10

11        TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
       BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
12            UNITED STATES MAGISTRATE JUDGE

13

     APPEARANCES:
14

15   For the Plaintiffs:      PANAGIOTA BETTY TUFARIELLO, ESQ.
                              25 Little Harbor Road
16                            Mt. Sinai, New York 11766

17

     For the Defendant:      ARTHUR MORRISON, ESQ.
18                           11 Skyline Drive
                             Hawthorne, New York 10532
19

20

21   Court Transcriber:      SHARI RIEMER
                             Typewrite Word Processing Service
22                           211 N Milton Road
                             Saratoga Springs, New York  12866
23

24

25

     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

2

1  (Proceedings began at 12:03 p.m.)

2  (Mr. Morrison's microphone not on during proceeding.)

3          COURT CLERK: Calling Civil Case 11-5802, <u>Genometrica</u>

4  <u>Research Inc. v. Gorbovitski, et al.</u>

5          Please state your appearance for the record.

6          MS. TUFARIELLO:  Good morning, Your Honor.  My name

7  is Panagiota Betty Tufariello.  I'm with Intellectual, the law

8  offices of P.B. Tufariello P.C. located in Mt. Sinai, New

9  York.  I'm here this morning on behalf of the plaintiff

10  Genometrica Research Inc.  I'm also appearing on behalf of

11  Hofheimer, Gartlir & Gross, my co-counsel in the case.

12          THE COURT: All right.  Good morning.

13          MR. MORRISON:  Good morning, Judge.  My name is

14  [inaudible] behalf of defendants.

15          THE COURT: Mr. Morrison, I can tell we didn't pick

16  up any of that on the machinery here.  So I need to get --

17  pull that mic.  You can pick it up and pull it closer to you.

18  Make sure the green light is on at the bottom

19          MR. MORRISON: Shall I begin again?

20          THE COURT: Well, no.  I'll get your appearance but

21  unfortunately you're going to have to bring it as close as I

22  have this to me.  Otherwise the machinery won't pick up your

23  voice.

24          MR. MORRISON: Can you hear me now?

25          THE COURT: It's not a matter of whether I can hear

3

1   you, sir.   I can hear you without the microphone but the

2   machinery isn't picking it up.   These conferences are all

3   digitally recorded.

4               MR. MORRISON: Can you hear me --

5               THE COURT: Mary, can you tell me?

6               THE CLERK: Yes.   Speak into the microphone.

7               MR. MORRISON: Is that bottom?

8               THE CLERK: Make sure the little light is on, the

9   little green light on.

10              THE COURT: The green light at the bottom.   If it's

11  not there's a push button.   Do me a favor, push that once. I

12  want to hear it without --

13              MR. MORRISON: The green light?

14              THE COURT: Yes.   Now speak into the mic if you

15  would.   Just --

16              MR. MORRISON: Arthur Morrison.

17              THE COURT: Now hit the green light and do it again

18  if you would.   We're watching the machine because the machine

19  tells us whether it's getting it or not.   Push it again if you

20  would.   Mary, is that picking up?

21              THE CLERK: The light is on?   As long as the light is

22  on it will pick up and you're speaking into the microphone.

23              THE COURT: All right.   I had you come in because I

24  had some concerns obviously about the issues that have arisen

25  between counsel on both sides here and we need to get it

4

1  resolved today.  I'm going to give you both an opportunity to

2  give me some further information but here's what I feel I'm

3  looking at.

4         First of all, when we met back in March in the civil

5  conference minute order under Item 2 I said that plaintiff's

6  counsel requested permission to serve expedited discovery on a

7  limited issue to assist the plaintiff in filing its opposition

8  to the motion to dismiss.  After hearing from both sides I

9  granted plaintiff's request to the following extent.

10 Plaintiff's counsel may serve a limited formal document

11 request on Monday, March 9th requesting any records or

12 communications relating to the three grant applications

13 counsel discussed today purportedly made by the defendants to

14 the NIH.

15        Defendant's counsel stated today that there was only

16 one grant application to the NIH.  Whatever information/

17 documents the defendants have in their possession, custody or

18 control which responds to the plaintiff's anticipated limited

19 document demands must be served on plaintiff's counsel no

20 later than March 27, 2012.  Those responses are to be signed

21 off by the individual defendants as well as by defendant's

22 counsel.  Defendant's counsel stated that he has already

23 turned over to plaintiff's counsel a flash drive containing

24 approximately 100,000 documents.

25        The next paragraph is equally important.  It says

5

1    the following.  This limited document demand is not prejudiced

2    either party in serving regular document demands and

3    interrogatories by the April 13, 2012 deadline set by the

4    court today and found in the accompanying case management and

5    scheduling order. If either side serves its demands prior to

6    the April 13th deadline then the responses are due six weeks

7    from the date the demands are received and I state all

8    depositions in the case.

9             I also issued a case management order that gave the

10   deadlines for serving not only the expedited demands which I

11   had said were to be served on March 9th but for any other

12   demands or discovery demands by way of document requests or

13   interrogatories that were necessary in the case.

14            So plaintiff was perfectly within her rights to

15   serve that second round of demands.  I am somewhat concerned

16   when I see, for example, that a second round of demands

17   contained 200 separate document requests which seems a little

18   excessive here.  So we're going to work this out today one way

19   or the other.

20            I don't know why you feel you're entitled to a

21   protective order, Mr. Morrison, but I'm going to let you

22   address that further at this point.  Just because you

23   responded to the first round for expedited discovery doesn't

24   mean you don't have to respond to what was filed after that.

25            MR. MORRISON: If I could respond, Your Honor.

6

1              THE COURT: Go ahead.

2              MR. MORRISON: [Inaudible] is that my client prepared

3      a research report [inaudible] of 2011.  We provided that

4      20,000 pages [inaudible] initial case conference.  So that's

5      [inaudible] and our responses to [inaudible] was [inaudible]

6      documents electronically stored [inaudible].  We provided

7      those 100,000 pages of what the universe [inaudible] research

8      [inaudible].  So they had that on March 9th --

9              THE COURT: All right.  I get that.

10             MR. MORRISON: So what happens next is that they've

11     asked series of questions and my client is in [inaudible]

12     universe [inaudible].  She is not here and I didn't have an

13     opportunity to [inaudible] show them to her and say how much

14     of that is contained in what we already gave [inaudible].  I

15     couldn't do it.  So the argument here is that they're asking

16     us to compel.  We've already provided [inaudible].  As far as

17     [inaudible] overly broad.  It's very complicated.  I can't do

18     it and I need time for her when she comes back from Russia

19     [inaudible] she left [inaudible] and she hasn't been here

20     [inaudible].  That's the problem.

21             THE COURT: Well, part of my concern is she may be in

22     Russia but there's mail and there's email.  There are lots of

23     ways to communicate with your client.  Why does the court have

24     to wait until she comes back from Russia?  I don't understand

25     that.

7

1          MR. MORRISON: [Inaudible] not here either

2  [inaudible] as to what happened.  Your Honor's direction

3  [inaudible] sent you [inaudible] responses.  We sat with

4  [inaudible] prepared [inaudible] and I include everything we

5  [inaudible] and I have to do same thing again when she comes

6  back.

7          THE COURT: No, no.  Sir, I get that.  You keep

8  saying when she comes back and I still don't understand if

9  they have copies of these requests why it's going to take

10 until they come back for you to have communication with them

11 to try to get this resolved.

12         MR. MORRISON: Because they're all technical

13 questions, Your Honor.  They're asking about this and

14 [inaudible] pages [inaudible].

15         THE COURT: But these --

16         MR. MORRISON: And give answers [inaudible]

17 connection with this case.

18         THE COURT: All right.  But let me take a step back

19 here for a minute.  Let me take a step --

20         MR. MORRISON: She'll [inaudible].

21         THE COURT: Let me take a step back for a minute.  Do

22 your clients have copies of the document requests and

23 interrogatories that were served?  Did you give him a copy?

24         MR. MORRISON: I [inaudible].

25         THE COURT: So it's not as if they don't know what's

8

1  being asked for; correct?

2          MR. MORRISON: [inaudible]

3          THE COURT: I'm assuming you've produced these

4  100,000 pages of documents on a CD of some sort; yes?

5          MR. MORRISON: Yes, [inaudible].

6          THE COURT: Is there some reason why your clients

7  don't have the same CD and can't be looking through these?

8          MR. MORRISON: I think the CD is here in New York.

9  She's overseas, Your Honor.  I [inaudible] have a copy of the

10  CD [inaudible].

11          THE COURT: Mr. Morrison, I get that but I just said

12  to you the mails work.  Why can't you handle it that way?  If

13  she doesn't have the CD why can't a copy be mailed to her? I'm

14  sure she's got a computer where she is.

15          MR. MORRISON: I'm sure [inaudible].

16          THE COURT: There are ways to get this done.

17          MR. MORRISON: I would agree.

18          THE COURT: I'm not waiting for her to come back from

19  wherever she is to get this process started.  I'm just not

20  going to do that.  Frankly there's no reason to.  The case is

21  going to move.  It needs to move.  This isn't a surprise to

22  anybody.  I'm going to speak to Ms. Tufariello in a moment

23  because I want to understand why 200 requests are necessary in

24  a case like this but there are other ways to get this mission

25  moving and you've got to do it.

9

1      MR. MORRISON: Yes, Your Honor.

2      THE COURT: Ms. Tufariello, with 100,000 documents in

3  your possession why do you possibly need 200 requests?

4      MS. TUFARIELLO: Very fair question, Your Honor.  We

5  had an opportunity to review the documents that were actually

6  turned over to us.  First of all, it wasn't a CD.  It was a

7  hard drive.  The information that is contained in the hard

8  drive is missing about 90 percent of the documents that we're

9  actually requesting.  The 100,000 documents contain schematics

10 of some equipment that had been tested in the process of the

11 development of the DNA sequencer which happens to be at issue

12 in the case.  There is a couple of reports from some of the

13 scientists but they are just that; reports.  Summaries of

14 findings out of an experiment or a series of experiments that

15 were run in connection with the DNA sequencer.

16      Some of the things that are in fact missing vis-a-

17 vis the DNA sequencer -- at least the DNA sequencer alone are

18 for example email communications between each one of the

19 individuals that are working in the lab and Ms. Vera Gorfinkel

20 [Ph.] and Mr. Gorbovitski who are the two defendants in the

21 case whose work is at issue with the DNA sequencer.  That's

22 not in it.

23      What else is not in it --

24      THE COURT: Wait, wait.  Assuming that there are such

25 emails.

1          MS. TUFARIELLO: There have to be, Your Honor,

2    because --

3          THE COURT: Well, on what basis do you draw that

4    conclusion?

5          MS. TUFARIELLO: On the basis that when work is being

6    done at the university it doesn't happen sporadically.  It

7    happens continuously and all parties have to in fact be --

8    have a complete understanding of what's going on at each

9    phase.  As work is progressing results are probably generated,

10   observations are generated.  Observations are generated.

11   Meetings are being called.

12         THE COURT: I don't doubt that is the case but why

13   are you -- you're assuming that that's all transmitted by

14   email.

15         MS. TUFARIELLO: I'm not saying all of it but I am

16   saying some of it.

17             Another thing that's missing, blatantly missing are

18   the lab notebooks, and I use the term lab notebooks very

19   broadly because from the time that -- things have changed.  I

20   have personal knowledge of how things are run at the

21   university as a result of my own spouse having worked for the

22   Research Foundation and in the '80s and in the '90s when they

23   were doing research they had lab notebooks.  Today perhaps

24   they don't have lab notebooks.  What they do have is computers

25   and perhaps if they do -- if they are generating lab reports

1   they're on the computers.  They're not necessarily in the lab

2   notebook but traditionally when you're doing work for research

3   there is a lab notebook.  The lab notebook is dated day by

4   day.  The equipment that is being used at each phase of the

5   project is recorded.  The reagents are recorded.  The actual

6   experiment beginning and end is recorded.  Any observations

7   that take place in the process is recorded.  Any conclusions

8   that are arrived at as a result of observation and data

9   collections is recorded and that -- all that information is

10  shared at meetings and perhaps there are minutes of those

11  meetings as well which not only --

12          THE COURT: Perhaps.  Perhaps.

13          MS. TUFARIELLO:  -- record what has been found but

14  also what has -- there has to be, Your Honor.  The only reason

15  I'm saying there has to be is because the reports that are

16  contained in the database that was turned to us on a hard

17  drive clearly raise the inference that a lot of work occurred

18  to get to that point.  One report in particular was 90 pages.

19  Well, we'd like to see the raw data of where these -- this

20  information contained in the report is coming from.  It's akin

21  to having an expert witness who issues an expert's report and

22  then the person who reads the expert's report wants to see the

23  raw data and documents that were in fact used to generate that

24  expert's report.

25          So it's exactly the same kind of thing.  We're

12

1   looking for the raw data that led to some of the information

2   that is contained on the hard drive.

3           THE COURT: All right.

4           MS. TUFARIELLO: Some of the --

5           THE COURT: What I'd like to see while you're

6   discussing this, I want to see the demand you served in the

7   limited capacity for the information that you needed to

8   respond to the motion and then I'd like to see the 200 that

9   you just -- that you've served that you're asking him to

10  answer.  Do you have those with you?

11          MS. TUFARIELLO: Unfortunately I do not, Your Honor,

12  because I did not know what part of the entire packet of

13  discovery that we served that Mr. Morrison was in fact

14  objecting to.

15          The other thing that -- the other reason that I'd

16  like to put on the table is I personally am focused on the DNA

17  sequencer because that's my role in this litigation.  However,

18  there's a sister part to this case and that's the state causes

19  of action in which we allege a lot of misfeasance on the part

20  of the defendants.  Misappropriation, for example, of monies,

21  improper spending of monies, use of those monies for to

22  achieve objectives that were totally unrelated to the business

23  venture that brought these parties together to begin with, and

24  a big chunk of the documents, a big chunk of the 200 requests

25  that we're making also relate to the state causes of action.

1           It's very interesting, Your Honor, as I'm sitting

2    here to be listening to this -- to the reasons that are being

3    submitted to this court as an explanation for failure to

4    respond to me.  In my case when I placed the phone call the

5    very first thing that came out of Mr. Morrison's mouth was

6    well, what about the motion to dismiss.  It was my impression

7    that the real reason behind the delay on the part of the

8    defendants is not so much because they need additional time or

9    Ms. Gorbovitski is in Russia.  This is the first time I'm

10   hearing this.  But rather because they were looking for that

11   dismissal to move the case to state court and then maybe

12   perhaps they would like to submit their documents.

13           I seriously question the basis that has been put

14   before this court for this delay.  It's not the 200 requests.

15   If that was the case why didn't Mr. Morrison tell me this when

16   I first communicated with him.  Why didn't he say to me this

17   is repetitive of this one, this one or that one.  There are 19

18   causes of action, Your Honor, each directed to separate

19   issues.  There are 200 requests only because you're showing me

20   different causes.

21           Our interrogatories on the other hand are very few

22   cognizant of the fact that we only have 25 under the rules to

23   begin with and because we were very focused.  We figured let's

24   get our documents, let's understand, we'll take our deposition

25   and we'll take it from there.  200 requests in the face of 19

14

1   causes of action, some of them related, some of them totally

2   independent of each other makes sense.  It's not that I have

3   only one or two or three causes of action.

4          THE COURT: Wait one second.  One of the things I

5   made a note to bring up which concern me greatly, Mr.

6   Morrison, was the communication issue here given the

7   complaints I got in writing from plaintiff's counsel.

8   Certainly I don't want to hear going forward that when an

9   attorney of record here calls you and leaves a phone message

10  or emails you or sends you a document that it's a days before

11  you get back to that person.  I don't know what your practices

12  are but that's not going to fly here.  I expect even if you're

13  not able to talk to them or give them the information you at

14  least give them the courtesy of a call or a response.  So I

15  don't want to hear -- I don't want to get anything in writing

16  again saying that they've attempted to reach you and they're

17  not getting a response.  All right?

18          MR. MORRISON: [Inaudible]

19          THE COURT: You can respond to the other part.

20          MR. MORRISON: [Inaudible] and we would respond

21  [inaudible].  There are numerous emails back and forth

22  [inaudible] court and [inaudible].

23          THE COURT: Who is this?

24          MR. MORRISON: [Inaudible]

25          THE COURT: RAPP?

1          MR. MORRISON: [Inaudible] RAPP.  So [inaudible]

2          THE COURT: Did you hear back from Mr. Rapp at all?

3          MS. TUFARIELLO: No, Your Honor.  As a matter of fact

4    at one point -- first of all, let me just point to the court

5    before I talk about Mr. Rapp getting back to me.  Mr. Rapp is

6    still not admitted and Mr. Rapp has still not filed a notice

7    of appearance.  Out of a courtesy to Mr. Rapp and respect we

8    have been keeping him in the loop and I have been sending him

9    emails.  In the last set of emails that I communicated both to

10   Mr. Morrison and to -- I might add the address, the email

11   address that is actually reflected on the docket which I

12   believe says A. Katz, K-A-T-Z.  I sent an email always to that

13   address.  I sent it to Mr. Morrison and I also sent it to Mr.

14   Rapp.  The last few emails I sent they got bounced back to me

15   and they said to me --

16         THE COURT: All right.

17         MS. TUFARIELLO:  -- they're not there.

18         THE COURT: All right.  I'm telling you right now I'm

19   not going to require any attorney in these proceedings to

20   respond to somebody who's not counsel of record.  There's no

21   notice of appearance filed here.  If he wants to participate

22   in this case in this court he's going to have to file a notice

23   of appearance.  If he's not admitted then he can apply for pro

24   hac vice admission but I'm not requiring counsel to respond to

25   Professor Rapp.

1          MR. MORRISON: When she called me last time and I

2   called her right back. So I don't think that's an issue

3   [inaudible].

4          THE COURT: That's fine.

5          MR. MORRISON: If she calls me, I call her back.

6          THE COURT: That's fine.  I'm just telling you don't

7   rely on Professor Rapp here to be your agent to respond to her

8   because I'm not going to tolerate that.

9          MR. MORRISON: There's no question.

10         THE COURT: All right.

11         MR. MORRISON: Can I respond to what she said?

12         THE COURT: Yes, you may.

13         MR. MORRISON: What's really happening is that

14  [inaudible] SUNY is [inaudible] research that goes on with

15  [inaudible] dollars and after so many years there's no

16  [inaudible] first case [inaudible] replaced by [inaudible]

17  amended complaint said that there were trademark violations

18  with numerous [inaudible] causes of action [inaudible].  There

19  are no trademarks because there's no products.  [Inaudible]

20  most recent case [inaudible] motion to dismiss [inaudible]

21  that [inaudible] claim that is not [inaudible] that are not

22  owned by them but owned by SUNY and as far as the [inaudible]

23  are concerned there's no product.  All [inaudible] here is not

24  unusual is [inaudible] research.  Sometimes [inaudible],

25  sometimes there isn't.  This happens to be the one case where

17

1   somebody enters into a license agreement with the university

2   [inaudible] here [inaudible] say [inaudible] research on DNA

3   sequencer.  Okay, they did it.

4          My client is [inaudible] she was the lead person

5   involved in the research.  A year later, two years later,

6   three years later.  This is [inaudible].  We gave as part of

7   the initial case disclosure [inaudible] report [inaudible].

8   They've had that [inaudible].  Now we have a second motion to

9   dismiss because basically they now [inaudible] representing

10  the university [inaudible] they [inaudible] they don't need to

11  [inaudible] that's another issue we have here.  All of the

12  items she wants, there's 200 items.  She can call up

13  [inaudible] she writes them, calls them.  In fact, she was

14  part of the university program many years ago.  So she has

15  knowledge of their procedure.

16         All -- at least 200 items she wants from us she can

17  get from them with a phone call, we're your lawyer.  So now

18  we're in a position we have to provide the information

19  [inaudible] I have to go back to my client.  She has

20  [inaudible] I've asked [inaudible] university and she's not

21  here.  So I [inaudible].  When I spoke to my colleague I had a

22  cordial conversation.  I don't recall saying [inaudible] what

23  she said.  I'm familiar with the [inaudible] case [inaudible]

24  discovery is not stayed [inaudible] dismissal [inaudible].  I

25  know [inaudible] recently [inaudible].  I put that in my

18

1    letter.  That was not the focus of our conversation.  So

2    [inaudible] we will.  I just [inaudible].

3              THE COURT: Here's what we're going to do.  I allowed

4    discovery to go forward even in the face of the motion to

5    dismiss with the expectation that it would be reasonable

6    discovery at least until find out if all these claims survive

7    the motion to dismiss.  I find 200 document demands excessive.

8    I'm sorry, Counsel, but I find them excessive.

9              What I'm going to have you do for now is you're

10   going to cut the list down in half.  You'll take whatever time

11   you need to do that.  We'll talk about that in a moment.  You

12   request what is absolutely essential for you to have at this

13   point.  Once the motion to dismiss is determined if all the

14   causes of action go forward I'm going to let you come back

15   here and you can convince me, whatever you need to convince me

16   of of the additional materials that you need to support your

17   claims and I'll be happy to hear your application and I'll

18   give Mr. Morrison a chance to respond.  But for now I'm

19   directing you cut them in half and serve them on Mr. Morrison.

20             And, Mr. Morrison, we're going to set a time for you

21   to respond and I'm telling you now as I've already said the

22   fact that your client is out of the country doesn't absolve

23   the response to these demands.

24             MR. MORRISON: [Inaudible]

25             THE COURT: How long do you need?

1          MS. TUFARIELLO: I understand Your Honor's position

2    that you feel that these 200 requests are excessive.  However,

3    I know and maybe I misunderstood a point of clarification.

4    Your Honor indicated that I need to reduce them to 100 for

5    what I believe I need at this point.

6          THE COURT: I'm telling you to take the 100 most

7    essential ones.

8          MS. TUFARIELLO: The problem is I don't know what is

9    the most essential right now.  That's my concern.  When we

10   prepared the request for documents and it was a collaborative

11   effort both between myself and Hofheimer Gartlir & Gross we

12   worked very hard in getting them down to 200.  They were

13   originally 500 of them I must say.  The reason for this is

14   because there are 19 causes of action and each part of the 200

15   is directed to some -- some there's overlap and some there

16   isn't.  For me to -- for me to come back and say to you I need

17   one week or two weeks or how much time I need, I have to go

18   back and discuss it with Hofheimer Gartlir & Gross.

19         THE COURT: That's fine. I'm willing to give you

20   whatever time you tell me it's going to take.  I understand

21   that you -- you mentioned to me before there are 19 causes of

22   action.  I get that.  We're doing this in the context of a

23   pending motion to dismiss and I don't know if all 19 are going

24   to survive or not.  Frankly if there is some overlap you're

25   going to have to figure out what you need.  What's essential

20

1    right now.  I'm not prejudicing your rights to come back here

2    in the future if all 19 survive and we're moving forward.

3    Then you're going to make the case to me as to why you need

4    the additional documents.  Look, I'm perfectly open to looking

5    at that.  It may be that you need another 100 after that.  You

6    may need 150 after that.  I don't know what's going to happen

7    here but I'm telling you for now at this stage of the

8    proceeding 200 is excessive.  Cut it in half.

9              MS. TUFARIELLO: Can I have two weeks only because

10   next week is the 4th of July?

11             THE COURT: That's fine.

12             MS. TUFARIELLO: I don't know what vacation schedules

13   I have going forward. I know that I personally have to take a

14   trip up to Massachusetts for my daughter's college.  So --

15             THE COURT: I'm going to give you whatever time you

16   request.

17             MS. TUFARIELLO: July 15 I guess.

18             THE COURT: All right.

19             MS. TUFARIELLO: Two weeks from now approximately.

20             THE COURT: All right.  Friday is the 16th.  So you've

21   got until the 16th.

22             MS. TUFARIELLO: I appreciate it.

23             THE COURT: You'll serve them by July 16th.

24             MS. TUFARIELLO: If I serve them sooner?

25             THE COURT: If you serve them sooner that's fine.

1          MS. TUFARIELLO: Okay.

2          THE COURT: I'm giving until August 20th, Mr.

3  Morrison, to get the responses done and the documents served.

4  All right?

5          MR. MORRISON: Very good.

6          MS. TUFARIELLO: Irrespective of when I serve it?

7          THE COURT: Irrespective of when you serve it.  I

8  don't want anybody back here telling me things weren't done on

9  time.  You've got this stretch.  You're getting a bigger

10 stretch built in because of what I'm making Ms. Tufariello do

11 now to comply with my order.  So you need to communicate with

12 your clients and as I said if they're not here, they're not.

13 They're defendants in a pending litigation.  They've got to

14 respond.

15         MR. MORRISON: I will do that. Can I say one more

16 thing?

17         THE COURT: Go ahead.

18         MR. MORRISON: [Inaudible] industry [inaudible] there

19 are at this university [inaudible] search [inaudible] side by

20 side [inaudible] research [inaudible] is that [inaudible] no

21 development of [inaudible].

22         THE COURT: You told me that the first day you were

23 here.  I recall this.  Go ahead.

24         MR. MORRISON: [Inaudible] that was [inaudible] world

25 [inaudible] colleague [inaudible] is that [inaudible] there

22

1    and [inaudible] so [inaudible] out there [inaudible] beyond

2    this stage of research [inaudible] marketplace [inaudible]

3    beyond [inaudible].   They just didn't [inaudible] development

4    stage [inaudible] involved in the case [inaudible] after they

5    put their report in in October [inaudible] federal court

6    [inaudible] didn't happen in this case.   I'm happy to comply.

7    I'm happy to do it.

8              THE COURT: And I have no doubt that you brought this

9    up to Judge Spatt in the motion to dismiss; right?

10             MR. MORRISON: I believe [inaudible].

11             THE COURT: So --

12             MR. MORRISON: But I just wanted you to understand

13   that we're not hiding anything [inaudible] question of

14   [inaudible] federal system.

15             THE COURT: I get your argument.

16             MR. MORRISON: [Inaudible] Are we excused, Your

17   Honor?

18             THE COURT: In about two seconds, yes.   I'm going to

19   put an order in summarizing what we talked about.   You'll get

20   the amended demand served by the 16th at the latest and you're

21   going to respond by August 20th.   Whatever you have to do to

22   lasso your clients you're going to do.   Everything else I've

23   said previously I'm holding depositions in abeyance until such

24   time as the motion is decided and that's where we are.

25             As I said, my ruling today is without prejudice to

1   you to come back in the future and show me why the rest of

2   those document requests are needed.

3          MR. MORRISON: [Inaudible] reserve our rights to

4   [inaudible].

5          THE COURT: Oppose?  Absolutely.  I'm not prejudicing

6   anybody here.  Not yet anyway.

7          MS. TUFARIELLO: Your Honor, one more thing if I may,

8   please.

9          THE COURT: Yes.

10          MS. TUFARIELLO: It's true the requests for documents

11   are 200 and we will comply with the court's order.  The

12   interrogatories however are not in any way or measure as --

13          THE COURT: There are 15 of them; right?

14          MS. TUFARIELLO: I'm sorry?

15          THE COURT: There are 15.

16          MS. TUFARIELLO: Yes.

17          THE COURT: So you're under the limit which means

18   they have to be answered.

19          MS. TUFARIELLO: Now, can we get an answer on those a

20   little sooner?

21          THE COURT: I'm going to give him until August 20th

22   with this proviso.  If these two things are not addressed as

23   they should be addressed by August 20th I'm warning you, Mr.

24   Morrison, I'm going to impose sanctions.

25          MR. MORRISON: That would [inaudible].

24

1          MS. TUFARIELLO: I don't think so, Your Honor.  I

2     have no responses.

3          MR. MORRISON: We [inaudible] same time.

4          THE COURT: Well, it sounds to me --

5          MR. MORRISON: [Inaudible]

6          THE COURT: It sounds to me that before you leave the

7     courthouse today and there's a room right back -- two of them

8     behind the courtroom to talk to each other.  You say you

9     served them.  She says she doesn't have them.  You need to

10    talk to each other.

11         MR. MORRISON: [Inaudible] motion practice

12    [inaudible] included [inaudible].

13         MS. TUFARIELLO: I believe my colleague is reference

14    -- is referring to the initial automatic disclosures which

15    were in fact provided to us on March 9th.  However, in response

16    to our April 13 set of interrogatories that were submitted to

17    Mr. Morrison I have not received any response to those

18    interrogatories either.

19         MR. MORRISON: [Inaudible] those [inaudible] same

20    time as the [inaudible].

21         THE COURT: All right.

22         MR. MORRISON: [Inaudible]

23         THE COURT: Talk to each other.

24         MS. TUFARIELLO: I couldn't have had them since March

25    26th, Your Honor.

25

1          THE COURT: Because you didn't serve them.

2          MS. TUFARIELLO: I served them on April 13th.

3          THE COURT: Right.  Do you understand that, Mr.

4    Morrison?

5          MR. MORRISON: Yes.

6          THE COURT: Talk to each other.  If this doesn't get

7    resolved then you're free to make an application.

8          MS. TUFARIELLO: Yes, Your Honor.

9          MR. MORRISON: [Inaudible]

10          THE COURT: By August 20th.  You're telling me that

11    you served them already.  So it should be a matter of you just

12    copying them.

13          Have a good weekend.

14          MS. TUFARIELLO: Thank you, Your Honor.

15                    * * * * *

16

17

18

19

20

21

22

23

24

26

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                              _____

6                                     Shari Riemer

7  Dated:   June 28, 2012