**FILED**
**CLERK**

1/31/2013 9:25 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
GENOMETRICA RESEARCH INC. and
THE RESEARCH FOUNDATION OF THE
STATE UNIVERSITY OF NEW YORK,

                        Plaintiffs,

             -against-

BORIS GORBOVITSKI, VERA
GORBOVITSKI a/k/a VERA GORFINKEL,
and ADVANCED BIOMEDICAL MACHINES
INC.

                     Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-cv-05802 (ADS)(AKT)

<u>**APPEARANCES:**</u>

**Hofheimer Gartlir & Gross LLP**
*Attorneys for the Plaintiffs*
530 Fifth Avenue
9th Floor
New York, NY 10036
     By: Nicholas Bruce Malito, Esq.,
        Robert J. Kenney, Jr. Esq., Of Counsel

**The Law Offices of P.B. Tufariello, P.C.**
*Attorneys for the Plaintiffs*
25 Little Harbor Road
Mt. Sinai, NY 11766
     By:  Panagiota Betty Tufariello, Esq., Of Counsel

**Arthur Morrison, Esq.**
*Attorney for the Defendants*
11 Skyline Drive
Hawthorne, NY 10532

**William V. Rapp, Esq.**
*Attorney for the Defendants*
85 River Road
Briarcliff Manor, NY 10510

**SPATT, District Judge**.

The Plaintiff Genometrica Research Inc. ("Genometrica") filed the present action on November 29, 2011, asserting federal and state law claims, including patent infringement and unfair competition under the Lanham Act, against the Defendants, Boris Gorbovitski ("Gorbovitski"), Vera Gorbovitski, a/k/a Vera Gorfinkel ("Gorfinkel"), and Advanced BioMedical Machines, Inc. ("ABMM") (collectively, the "Defendants"). Presently before the Court is the Defendants' motion to dismiss. For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

For purposes of this Rule 12(b)(6) motion the court must take as true all of the allegations of the amended complaint, and must draw all inferences in the Plaintiffs' favor. See Weixel v. Board of Educ., 287 F.3d 138, 145 (2d Cir. 2002). The district court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken, or . . . documents either in [the] plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993).

The Plaintiff Genometrica was founded in 1996 under its previous name, BioPhotonics Corporation. Genometrica has always been engaged in the development of a biomedical device known as a DNA analyzer and sequencer (the "Medical Device"), along with the processes to use it. In 1999, Genometrica entered into a License Agreement with the Research Foundation of the State University of New York (the "Foundation"). Under the terms of the License Agreement, the Foundation retained ownership of the Medical Device, while Genometrica was granted an exclusive worldwide license to use any technology, discovery, and process, whether

patentable or not, related to the Medical Device. Thus, Genometrica was granted an exclusive license for several Foundation-owned patents related to the Medical Device. In addition to the License Agreement, the Foundation and Genometrica have entered into a series of research agreements related to the continuation of research in connection with the development of the Medical Device. These agreements similarly provide that any inventions that resulted from the continued research would also be owned by the Foundation and exclusively licensed to Genometrica.

Genometrica was formed by one of the two individual Defendants, Vera Gorfinkel. On March 15, 2005, for the purpose of facilitating Genometrica's ability to obtain additional capital, the Defendants Boris Gorbovitski and Gorfinkel each entered into a separate agreement with Genometrica (the "Restrictive Covenant Agreement"). In these agreements, they each agreed (a) to assign to Genometrica all of their rights, titles, and interests in and to all inventions, formulas, or other writings in the field of biomedical instrumentation relating to Genometrica's business, *i.e.*, Genometrica's Medical Device; and (b) not to disclose, or to utilize, any of Genometrica's trade secrets, confidential information, knowledge or data for the benefit of anyone other than Genometrica. Between 1996 and 2008, Genometrica issued more than 5.3 million shares of stock to Gorbovitski and Gorfinkel. Consequently, Gorbovitski and Gorfinkel cumulatively owned approximately 45 percent of Genometrica's total shares. However, in July 2008, an outside company named Invar Consulting, Ltd. purchased eight percent of Genometrica's stock, for which Gorbovitski and Gorfinkel received approximately $1.8 million in cash for their shares.

After the July 2008 sale of Genometrica's stock to Invar, the Defendants Gorbovitski and Gorfinkel no longer retained any ownership in Genometrica, but Gorbovitski continued on as the

sole director and executive officer through August 2011.  The Plaintiffs allege that during this time period, after the Defendants had sold their stake in Genometrica, they created a new company, the Defendant Advanced BioMedical Machines, Inc. ("ABMM").  According to the Amended Complaint, ABMM was formed to compete directly with Genometrica in the research and development of ABBM's own DNA analyzer and sequencer (the "ABMM Sequencer").  Gorbovitski has been ABMM's sole shareholder, chairman, and chief executive officer since its formation.  In addition, since ABMM's inception, Gorbovitski and/or Gorfinkel have owned one hundred percent of ABMM'S capital stock.

The Plaintiffs allege that despite the Restrictive Covenant Agreements with Genometrica, Gorfinkel and Gorbovitski wrongfully concealed from Genometrica their creation, control and ownership of ABMM.  It is also asserted that their actions taken in the name and on behalf of ABMM breached their fiduciary duties to Genometrica.

For example, Gorbovitski submitted to the National Institutes of Health ("NIH") an Application for Federal Assistance (the "Grant Application") in the name of Defendant ABMM in relation to the ABMM Sequencer, which sought total estimated funding of $2,350,000 for a four year research period.  However, the Plaintiffs allege that the ABMM research project described in the Grant Application is a logical extension and continuation of Genometrica's research and development of its Medical Device.  In this regard, it is claimed that the ABMM Grant Application wrongfully claims for ABMM the right to utilize and practice the technology the Foundation licensed exclusively to Genometrica pursuant to the Research and License Agreements.

In addition, the Amended Complaint states that ABMM publicly holds out that it is developing and commercializing a DNA analyzer and sequencer that, according to ABMM's

own marketing materials, is substantially similar if not identical to, and based on, or a natural progression of Genometrica's Medical Device.  Further, it is alleged that ABMM publicly states in its marketing materials that its device employs and exploits inventions, technology patents, know-how, trade secrets and related intellectual property and other information that belongs to Genometrica.  For instance, ABMM is the owner of a website, www.advancedbiomedical machines.com.  According to the Complaint, the Defendants have used this website to promote, market, offer to sell, and sell the ABMM Sequencer—a version of the Medical Device—without authorization from Genometrica.

In the present action, the Plaintiffs have brought a number of claims against the Defendants, sounding in both federal and state law.  Chief among the federal claims are patent infringement and unfair competition.  In the instant motion to dismiss, the Defendants appear to assert two defenses in order to dismiss the claims, namely: (1) the Plaintiffs have no standing to sue for patent infringement, only the Foundation does; and (2) the Plaintiffs have failed to state a claim for federal unfair competition.

## II.  DISCUSSION

### A.  Legal Standard

It is well-established that a complaint should be dismissed under Federal Rule of Civil Procedure ("Fed. R. Civ. P. 12(b)(6)") only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  In deciding whether a complaint meets this threshold, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009). Only if this Court is satisfied that the Complaint cannot state

5

any set of facts that would entitle the Plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).

## B. Whether the Court Should Strike the Defendants' Motion as Untimely

As an initial matter, the Plaintiffs contend that the Court should strike the Defendants' present motion as untimely and direct the Defendants to answer the Complaint. Specifically, the Plaintiffs point out that the Defendants were required to respond to the Amended Complaint within 17 days after being served with it electronically, but the Defendants did not file their motion to dismiss until 19 days after being served with it electronically.

However, on May 17, 2012, the Court granted the Defendants' belated request for an extension of time. "[T]his Court has discretion to consider documents filed in violation of procedural rules." Pagan v. Abbott Labs., Inc., No. 10 Civ. 4676, 2012 U.S. Dist. LEXIS 159273, at *9 (E.D.N.Y. Oct. 20, 2012) (citation omitted); Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., No. 07 Civ. 0612, 2011 U.S. Dist. LEXIS 110955, at *6 n.1 (E.D.N.Y. Sept. 27, 2011) (citation and internal quotation marks omitted). In addition, Federal Rule of Civil Procedure 6(b) ("Rule 6(b)") provides that a court may grant an extension of time "after the time has expired if the party failed to act because of excusable neglect". Fed. R. Civ. P. 6(b)(1)(B). Therefore, consistent with the May 21, 2012 Order, the Court denies the Plaintiffs' motion to strike the Defendants' motion to dismiss as untimely.

## C. Whether the Defendants' Declarations Should Be Considered

Next, the Plaintiffs contend that the Defendants' declarations should not be considered by this Court when assessing the pending motion to dismiss. In particular, they maintain that the Defendants' declarations are outside of the pleadings and therefore not appropriate for consideration in the context of a 12(b)(6) motion, which must be decided on the complaint alone.

The Court agrees that portions of the Defendants' declarations contain legal arguments and hearsay, which is improper. While "[t]he Federal Rules of Civil Procedure do not create a standard for reviewing affidavits submitted in support of motions other than a motion for summary judgment. . . [this Court] will adopt the language of Rule 56 . . . as a guide for purposes of ruling on the present motion." Richards v. Computer Sci. Corp., No. 03 Civ.00630, 2004 U.S. Dist. LEXIS 19637, at*2 (D. Conn. Sept. 28, 2004). Accordingly, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In addition, "conclusory statements and statements not made on personal knowledge do not comply with the requirements of Fed. R. Civ. P. 56 . . . and, therefore, may not be considered." Id.

Therefore, the Court will disregard any portions of the Declarations which are not made on personal knowledge and do not set out facts that would be admissible in evidence. Furthermore, the Court will not consider any legal arguments contained in the Defendants' Declarations.

**D.  As to Whether the Plaintiffs Have Standing**

Before the Court considers the Defendants' arguments concerning the substantive merits of the Plaintiffs' allegations, the Court will first address the Defendants' arguments concerning standing.

### 1.  Whether It Was Proper for Genometrica to Add the Foundation as a Plaintiff

Although the Defendants' papers are at times lacking in clarity, they appear to contend that it was improper for Geometrica to add the Foundation as a party to this suit. However, despite the Defendants' argument to the contrary, it was not improper for Genometrica to have

added the Foundation as a plaintiff in the instant action. In fact, the License Agreement specifically allows Genometrica to name the Foundation in a lawsuit for patent infringement under certain circumstances.

As set forth above, in July 1999, the Foundation and Genometrica entered into an Exclusive License Agreement. (Am. Complaint Ex. 1). Article VII of the Agreement between the Foundation and Genometrica first states that the "Licensee and [the] Foundation shall promptly inform the other in writing of any license infringement by a third party and provide available evidence of infringement." (Am. Compl. Ex. 1, 7.1.) The Agreement then goes on to state that "[i]f within thirty (30) days after notification of alleged infringement [the] Foundation has not been successful in persuading the alleged infringer to desist and is not diligently prosecuting an infringement action or if [the] Foundation notifies [the] Licensee of its intent not to bring action [an] action against the alleged infringer, [the] Licensee may, but is not obligated to bring [an] action at its own expense and may use the name of [the] Foundation as [a] party plaintiff." (Am. Compl. Ex. 1, 7.2.)

The Court's understanding of these provisions, which the Defendants do not dispute, is that (1) the Licensee—here, Genometrica—must inform the Foundation of any license infringement by a third party and provide the Foundation with any available evidence of alleged infringement; and (2) if the Foundation either has not been successful in persuading the alleged infringer to desist and is not diligently prosecuting an infringement action *or* if the Foundation notifies the Licensee of its intent not to bring an action against the infringer, then the Licensee may bring suit and may use the name of the Foundation as a party plaintiff.

In the Court's view, Genometrica has complied with these provisions. On November 30, 2011, Genometrica provided notice to the Foundation via e-mail of the action it intended to file

and also sent a courtesy copy of the proposed complaint via e-mail. (Affirmation ("Aff.") of Panagiota Betty Tufariello, Esq., Ex. 13.) On December 1, 2011, Genometrica, by and through its attorneys and in accordance with Article VII of the Agreement, notified the Foundation via e-mail of the filing and also of its intention to bring a cause of action for patent infringement against the Defendants. (Id., Ex. 14.)

On December 2, 2012, a meeting was held between the Foundation and Genometrica. At that time, the Foundation requested evidence of the Defendants' infringement of the Foundation's patents licensed to Genometrica, pursuant to Article VII of the License Agreement. In response to this request, on December 5, 2011, Genometrica sent the Foundation a memorandum which set forth evidence of the Defendants' alleged infringement of the Foundation's patents licensed to Genometrica. (Id., Ex. 15 (withheld as work product).) Thus, the Court finds that Genometrica satisfied the requirement in the Agreement to inform the Foundation of any infringement and to provide the Foundation with available evidence of infringement.

On December 9, 2011, the Foundation sent Genometrica an e-mail in which it stated that at that time, they were not in a position to pursue infringement or other claims against the Defendants. (Id., Ex. 16.) Therefore, the Court also finds that Genometrica satisfied the requirement in the Agreement that the Foundation either fail in persuading the infringer to desist and not diligently prosecute an infringement action or notify the Licensee of its intent not to bring an action against the infringer. The Foundation plainly stated its intention not to bring an action against the Defendants and thus, pursuant to the Agreement, Genometrica may bring suit and may use the name of the Foundation as a party plaintiff. Although there is no indication that the Foundation executed a waiver under this section, the express language of the Agreement does

not require such a waiver. Rather, it only mandates that the Foundation notify the Licensee of its intentions, which it did via email.

Furthermore, on April 3, 2012, Genometrica provided a copy of its Amended Complaint to the Foundation. The Amended Complaint's caption identifies the Foundation as a party plaintiff, in accordance with Article VII of the Exclusive License Agreement. (Id., Ex. 17.) To date, the Foundation has voiced no objections to being named a party in the present matter.

Therefore, the Court agrees with Genometrica that, pursuant to Article VII of the Research Agreement, there is no error with the addition of the Foundation as a party to this matter.

The Defendants assert that once the Foundation, as the owner of the patent, determines that no patent infringement occurred, and informs Genometrica in writing to that effect, then the Foundation should never have been named as a party to the litigation—that only the Foundation can decide if patent infringement occurred. However, the Defendants have not pointed to any provision in the Agreement which states that the Foundation's assessment of potential infringement is conclusive and binding on the Licensee or this Court for that matter. Rather, Article VII clearly contemplates that the Foundation may in fact determine to not diligently prosecute an infringement action or even bring one in the first instance, and explicitly permits the Licensee to bring its own suit under those circumstances. The Foundation's allege determination that there was insufficient proof of infringement to prosecute an action against the Defendants does not preclude this case or warrant dismissal of the complaint. Contrary to the Defendants' assertion, the Foundation's analysis does not conclusively prove that there has been no patent infringement.

The Defendants also claim that Genometrica needed the Foundation's written authorization to commence this action. Once again, the Defendants have failed to point to any particular provision in the Agreement that would require such an authorization.

Finally, the Defendants maintain that Genometrica did not provide sufficient proof to the Foundation as required under the Agreement. As set forth above, Article VII of the Agreement between the Foundation and Genometrica states that the "Licensee and [the] Foundation shall promptly inform the other in writing of any license infringement by a third party and provide available evidence of infringement." (Compl. Ex. 1, 7.1.) In this regard, the Licensee need only provide available evidence of infringement, not necessarily a high threshold of proof. Thus, the Court sees no reason to doubt that the memorandum provided by Genometrica to the Foundation would suffice for purposes of satisfying this obligation. Moreover, it does not appear that the Foundation even requested Genometrica to provide further information.

Therefore, the Court finds the arguments made by the Defendants with regard to the addition of the Foundation as a party plaintiff to be without merit and it was proper for Genometrica to add the Foundation as a plaintiff.

## 2. Whether Genometrica Has Standing

In addition to the issue of whether the Foundation was properly added as a plaintiff, the Defendants also take issue with Genometrica's standing in this action.

"A party's standing to sue for patent infringement derives from the Patent Act, which provides that '[a] *patentee* shall have remedy by civil action for infringement of his patent.'" Enovsys LLC v. Nextel Commc'ns, Inc., 614 F.3d 1333, 1341 (Fed. Cir. 2010) (emphasis in original) (quoting 35 U.S.C. § 281). Despite this statutory language, courts have understood this Act to confer standing not solely on the actual patent owner, but also to parties that have some

substantial rights to the patent, as long as the title holder of the patent is joined. Id. at 1348 ("As a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the Lujan requirements.").

Therefore, it is clear that patent owners "and exclusive licensees who were given all substantial rights to the patent, may sue alone in their own right." My First Shades v. Baby Blanket Suncare, --- F. Supp. 2d ----, 2012 WL 6675118, at *4 (E.D.N.Y. Dec. 21, 2012). See Intellectual Prop., 248 F.3d at 1345 ("A grant of all substantial rights in a patent amounts to an assignment—that is, a transfer of title in the patent—which confers constitutional standing on the assignee to sue another for patent infringement in its own name."); Telebrands Corp. v. Del Labs., Inc., 719 F. Supp. 2d 283, 289–90 (S.D.N.Y. 2010) ("[C]ourts permit exclusive licensees to bring suit in their own name, without joining the patent owner, if the exclusive licensee holds 'all substantial rights' in the patent, becoming, in effect, an assignee (and therefore a 'patentee' within the meaning of Section 281).").

However, "where an exclusive license transfers less than 'all substantial rights' in the patents to the exclusive licensee, the exclusive licensee may still be permitted to bring suit against infringers, but the patent owner is an indispensable party who must be joined." Alfred E. Mann Found. for Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1359 (Fed. Cir. 2010); see Intellectual Prop., 248 F.3d at 1347–48 ("[A]n exclusive licensee having fewer than all substantial patent rights . . . that seeks to enforce its rights in a patent generally must sue jointly with the patent owner."); Telebrands, 719 F.Supp.2d at 289–90 ("An exclusive licensee ordinarily may not sue in its own name alone, but must join the patent owner in an action brought against an accused infringer.").

In order to assess whether an exclusive licensee was given all substantial rights to a patent, courts consider "the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent." Alfred E. Mann Found, 604 F.3d at 1360–61.

Here, the Defendants argue that because Genometrica is a mere licensee, it has not been constitutionally injured by any alleged patent infringement and/or state law violations related to the Medical Device. However, even an exclusive licensee has constitutional standing because "[a] party . . . that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention." Intellectual Prop., 248 F.3d at 1346–47; see also Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("[An exclusive licensee] is injured by any party that makes, uses, sells, offers to sell, or imports the patented invention.").

Any concerns about prudential standing are alleviated when an exclusive licensee joins the title holder in order to prevent multiple litigations, as Genometrica did in the instant case by joining the Foundation as a plaintiff. See Morrow, 499 F.3d at 1340 ("[T]he patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns. The patentee is joined for the purpose of avoiding the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer."). While the Foundation was not added as a plaintiff until after this case was commenced, that is of no consequence. "It

is sufficient for standing purposes that the title holder is eventually added to the suit, even if the title holder was not in the suit originally, because the exclusive licensee meets constitutional standing requirements." <u>My First Shades</u>, 2012 WL 6675118, at *5.

A situation in which Genometrica would not have standing to sue is if it was the holder of what is known as a "bare license". This type of license holder does not have the right to sue for patent infringement because this nonexclusive license "confers no constitutional standing on the licensee under the Patent Act to bring suit or even to join a suit with the patentee because a nonexclusive (or 'bare') licensee suffers no legal injury from infringement." <u>Intellectual Prop.</u>, 248 F.3d at 1345; <u>Rite–Hite Corp. v. Kelley Co.</u>, 56 F.3d 1538, 1553–54 (Fed. Cir. 1995) ("The grant of a bare license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide standing without the grant of a right to exclude others."). However, here Genometrica holds an exclusive license and accordingly does not fall into the category of a bare licensee. <u>See Morrow</u>, 499 F.3d at 1340 ("Parties that hold the exclusionary rights are often identified as exclusive licensees, because the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention."). <u>Cf. Intellectual Prop.</u>, 248 F.3d at 1345 (explaining that a bare license is merely "a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention and under which the patent owner reserves the right to grant similar licenses to other entities" but the licensee has no right to exclude others.

In sum, there are no issues with regard to Geonmetrica's standing in the instant case or Genometrica's unilateral addition of the Foundation as a party plaintiff. Therefore, the Defendants' motion to dismiss the present action on either of these grounds is denied.

**E. As to Whether the Plaintiffs Have Stated a Claim**

The Defendants also have premised their motion to dismiss on the Plaintiffs' failure to state a claim. The Defendants' memorandum in support of their motion is difficult to decipher, and the Defendants' submissions consistently refer to evidence despite the fact that they are bringing a 12(b)(6) motion to dismiss. In addition, the Defendants only cite to a single case in their entire memorandum of law in support of their motion, and this one precedent does not strengthen their position. Nevertheless, it appears to the Court that they are largely raising concerns with regard to the Third, Fourth, and Fifth Causes of Action, which are federal unfair competition claims brought under Section 43(a) of the Lanham Act. In particular, the Defendants allege that these counts are duplicative of Count Seven, violations of New York State Unfair Competition Laws, because they are part of the same nucleus of operative facts. In addition, the Defendants argue that these federal claims are merely dressed up state based tort claims because there is no completed product in current use, being marked, or being offered for sale. In addition, the Defendants assert that Count Eighteen is blank and therefore does not state a claim. The Court will address each argument in turn.

1. **Counts Three, Four and Five: Federal Unfair Competition Pursuant to 15 U.S.C. § 1125(a)**

The Plaintiffs have brought a total of three causes of action pursuant to 15 U.S.C. § 1125(a), or Section 43(a) of the Lanham Act. Two of these claims are brought specifically under Section 43(a)(1)(A)—one based upon false designation of origin and one based upon confusion, mistake and/or deception. Although the Plaintiffs divide their claim under 43(a)(1)(A) into two separate causes of action, they are really asserting a single claim under this provision for false designation of origin or false endorsement. The third claim is brought under Section 43(a)(1)(B) for false representations in advertising.

Section 43(a) provides, in relevant part, that:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 43(a)(1)(A) of the Lanham Act creates a federal cause of action for false endorsement. It is well-established that Section 43(a) "prohibit[s] misrepresentations as to the source of a product" through two types of practices: "'passing off' (also called palming off) in which 'A' sells its product under 'B's' name . . . [and] 'reverse passing off,' in which 'A' sells 'B's' product under 'A's' name." Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 780 (2d Cir. 1994).

> To succeed on a reverse passing off claim, [a plaintiff] must establish: (i) that the work at issue originated with the plaintiff; (ii) that the origin of the work was falsely designated by the defendant; (iii) that the false designation of origin was likely to cause consumer confusion; and (iv) that the plaintiff was harmed by the defendant's false designation of origin.

S & L Vitamins, Inc. v. Australian Gold, Inc., 521 F.Supp.2d 188, 207–08 (E.D.N.Y. 2007) (citation omitted); see also Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 565 (S.D.N.Y. 2009).

On the other hand, Section 43(a)(1)(B) of the Lanham Act creates a federal cause of action for false advertising. "To state a claim under this section, a plaintiff must allege '(1) [the] defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff s services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) [the] defendants' actions made plaintiff believe it would be damaged by the representations.'" FTA Market Inc. v. Nevi, Inc., No. 11 Civ. 4789, 2012 WL 383945, at *4 (S.D.N.Y. Feb. 1, 2012) (quoting Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 629 (S.D.N.Y. 2003), aff'd, 355 F.3d 206 (2d Cir. 2004)).

Here, the Plaintiffs allege that on ABMM's website, the Defendants marketed, offered to sell, and sold the ABMM sequencer, which falsely designated the origin as to the affiliation, connection, and association between such device and Genometrica's Medical Device, and misrepresented the nature, characteristics, qualities, or origin of the product. The Amended Complaint states that for a period of at least from February 2, 2011 through July 4, 2011, ABMM and Gorbovitski used the website www.advancedbiomedical machines.com to promote, market, offer to sell, and sell an ABMM Single Capillary Automated DNA Sequencer. As a result, the Plaintiffs contend that ABMM is clearly holding out and representing to the public in interstate commerce that it is the owner of all rights, title and interest to the website and the intellectual property contained therein, including the Medical Device. However, this representation is false according to the Plaintiffs, because the image of the ABMM Sequencer clearly shows the name "BioPhotonics"—Genometrica's former corporate name. Moreover, the Amended Complaint states that the image on the ABMM website was taken directly from a 2005 BioPhotonics

17

brochure prepared under the auspices of Gorbovitski as Genometrica's sole executive officer. (Am. Complt. at ¶¶ 143–51.)

As for false designation of origin under Section 43(a)(1)(A), the Plaintiffs claim that their allegations also constitute federal unfair competition because there is a likelihood of confusion, mistake and/or deception as to the affiliation, connection, and association between Defendants' ABMM Sequencer and Genometrica's Medical Device. The Plaintiffs claim that the Defendants have reverse passed off for sale the Medical Device on their website. It is alleged that the goods at issue originated with Genometrica; that the origins of the device were falsely designated by the Defendants; and that Genometrica has been harmed by the likely confusion this has caused. As for false advertising under Section 43(a)(1)(B), the Plaintiffs assert that the conduct of the Defendants, including their current use, marketing, offer to sell, and sale of the ABMM Sequencer, constitutes federal unfair competition because it misrepresents the nature, characteristics, qualities or origin of Defendants' ABMM Sequencer in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The Plaintiffs further allege that they were harmed by this conduct because they have suffered damages through various means, but not limited to: (i) the loss of potential customers and/or entities that work with or have an interest in purchasing and/or investing in Genometrica's Medical Device, (ii) the loss of NIH grants, (iii) harm to Genometrica's reputation, (iv) waste of Genometrica's investment in time, effort, and money, (v) the loss of further development of Genometrica's Medical Device and second generation technology, and (vi) the loss of Genometrica's goodwill.

First, with regard to the Defendants' assertion that the Plaintiffs cannot maintain federal causes of action for unfair competition along with state causes of action for the same, this contention is without merit. Unfair competition claims under New York common law are

governed generally by the same standards as Section 43(a) of the Lanham Act, except the common law requires a showing of bad faith or intent.  Regardless, there is nothing to prevent a plaintiff from asserting both types of claims.  See, e.g., Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("In this case, Plaintiff has alleged sufficient facts in the complaint to establish liability for unfair competition, both under federal and state law.").

Second, it appears that the Plaintiffs have adequately alleged the elements that they are required to plead for both false designation of origin and false advertising.  For false designation of origin or false endorsement, the Plaintiffs have alleged that the work at issue originated with Genometrica or the Foundation; (ii) that the origin of the work was falsely designated by the Defendants as their product; (iii) that the false designation of origin was likely to cause consumer confusion; and (iv) that the Plaintiffs were harmed by the Defendant's false designation of origin.

For false advertising, the Plaintiffs have alleged that on the ABMM website, the Defendants made a false or misleading representation regarding the ABMM Sequencer; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) the Defendants' actions made the Plaintiffs believe they would be damaged by the representations.  Therefore, at first glance, it appears that the Plaintiffs have adequately stated clams for federal unfair competition both under Section 43(a)(1)(A) and 43(a)(1)(B).

Although the Defendants do not provide the Court with any legal authority to support their positions, they appear to raise two main arguments with regard to the substantive merits of the Plaintiffs' claims.  First, they claim that the Plaintiffs must allege that the Defendants made

or sold the device at issue in order to be liable under 15 U.S.C. §§ 1125(a)(1)(A) or (a)(1)(B).

Second, they assert that the Plaintiffs have not alleged that they own a distinctive and registered trademark, so that they may not bring certain causes of action under the Lanham Act.

With regard to the making or selling of the device at issue, the Plaintiffs have alleged that the Defendants' current and former use, marketing, offer to sell and sale of the ABMM Sequencer, constitutes federal unfair competition because: (1) it falsely designates the origin as to the affiliation, connection, and association between such device and Genometrica's Medical Device, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) it causes the likelihood of confusion, mistake and/or deception as to the affiliation, connection, and association between Defendants' ABMM Sequencer and Genometrica's Medical Device, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); and (3) it misrepresents the nature, characteristics, qualities or origin of Defendants' ABMM Sequencer in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

In order to be liable under § 1125, an alleged infringer must "in connection with any goods or services, or any container for goods, *use[] in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . ." 15 U.S.C. § 1125. The Plaintiffs have plainly alleged that the Defendants have used, marketed, offered to sell, and sold the Medical Device at issue. (See Am. Compl. at ¶ 147 ("For a period of at least February 2, 2011 through July 4, 2011, ABMM and Gorbovitski used the website www.advancedbiomedicalmachines.com to promote, market, offer to sell and sell an ABMM Single Capillary Automated Sequencer.").) What specifically qualifies under § 1125—namely, what it means to "use in commerce"—need not be answered for purposes of the present motion.

It is sufficient at this point that the Plaintiffs have alleged that the Defendants have sold the product.  Whether the Plaintiffs will ultimately be able to prove this and whether something less may suffice is for another day.  Therefore, the Defendants' motion to dismiss the Plaintiffs' federal unfair competition claims on this ground is denied.

With regard to the trademark argument, the Defendants are not correct in asserting that the Plaintiffs need to have a registered trademark in order to prevail on their claims under 15 U.S.C. §§ 1125(a)(1)(A) or (a)(1)(B), or Section 43(a) of the Lanham Act.  In fact, one purpose behind Section 43(a) is to protect *unregistered* trademarks.  "Section 43(a) is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), protects registered marks."  Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002).  "Its purpose is to prevent consumer confusion regarding a product's source or sponsorship."  Id.

However, whether the Plaintiffs need to have a non-registered yet protectable mark in order to assert their various federal unfair competition claims, is not easily answered.  As somewhat explored above, there are various permutations of the federal unfair competition law under Section 43 of the Lanham Act.  Despite these multiple avenues for relief and its expansive language, this statute is not just a federal "codification" of the overall law of unfair competition. It is essentially limited to a prohibition against some form of false designation or misleading representation.  As the Second Circuit has observed, § 43(a) "does not have boundless application as a remedy for unfair trade practices."  Alfred Dunhill, Ltd. v. Interstate Cigar Co., 499 F.2d 232 (2d Cir. 1974).

Section 43(a) has developed into the federal vehicle for two major and distinct types of "unfair competition": (1) infringement of unregistered marks, names, and trade dress; and (2)

false advertising.  <u>Empresa Cubana del Tabaco v. Culbro Corp.</u>, 399 F.3d 462, 478 (2d Cir.

2005).  Some courts have referred to these two categories as the two "prongs" of 43(a).  There is

no question that if the Plaintiffs were utilizing Section 43(a) as a method to bring an

infringement claim for an unregistered mark, then the Plaintiffs would be required to allege that

they have a protectable mark.  This is why several courts have found that to prevail on a claim

under Section 43(a), a plaintiff must show that "(1) it has a valid trademark entitled to protection,

and (2) the defendant's mark infringes on the plaintiff's mark by causing a likelihood of

confusion among consumers as to the origin or sponsorship of its product."  <u>Jewish Sephardic

Yellow Pages. Ltd. v. DAG Media, Inc.</u>, 478 F. Supp. 2d 340, 356 (E.D.N.Y. 2006) (citing <u>Time,

Inc. v. Petersen Publ'g Co.</u>, 173 F.3d 113, 117 (2d Cir. 1999)); <u>see</u> <u>Arrow Fastener Co., Inc. v.

Stanley Works</u>, 59 F.3d 384, 390 (2d Cir. 1995) (noting that to prevail under 15 U.S.C. § 1114 or

15 U.S.C. § 1125(a) [Section 43(a)], a plaintiff must show it has a valid mark entitled to

protection and defendant's use of it is likely to cause confusion).

　　　　For an unregistered mark to be protectable under Section 43(a), the mark must be either

"inherently distinctive, *i.e.*, intrinsically capable of identifying its source, or . . . ha[ve] acquired

secondary meaning."  <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, 454 F.3d 108, 115–16

(2d Cir. 2006) (quotation omitted).  However, the Plaintiffs are not expressly utilizing Section

43(a) as a method to bring an infringement claim for an unregistered mark.  Therefore, the Court

must look to the main claims that the Plaintiffs are asserting under the umbrella of Section 43(a)

to determine if either claim requires the existence of a protectable mark.

　　　　With regard to Plaintiffs' false advertising claim which is asserted under Section

43(a)(1)(B), it does not appear that a plaintiff is required to allege that it has a protectable mark.

Under 43(a)(1)(B), a plaintiff is only required to plead that the defendant (1) used a false or

misleading description or representation of fact; (2) in interstate commerce; (3) in connection

with goods or services; (4) in commercial advertising or promotion; (5) where the description or

representation misrepresented the nature, qualities, or geographic origin of the defendants'

goods; and (6) the plaintiff is likely damaged by those acts.  The Court's understanding is that a

claim under this section does not require the existence of a valid trademark.  Therefore, this

cause of action is adequately pled and the Defendants' motion to dismiss this claim is denied.

On the other hand, the Plaintiffs' claim for false designation of origin under Section

43(a)(1)(A) does appear to require a plaintiff to allege that it has a protectable mark in the first

instance.  This type of claim requires a plaintiff to plead that the defendant (1) uses a false

designation of origin; (2) in interstate commerce; (3) in connection with goods and services; (4)

which is likely to cause confusion, mistake or deception; and (5) the plaintiff is likely to be

damaged by these acts.  The Lanham Act §43(a)(1)(A) does not explicitly require that the

plaintiff be the owner of a protectable mark.  However, "the vast majority of plaintiffs suing

under this subsection do own a valid mark."  McCarthy on Trademarks, § 27:14.  Indeed, it

appears that when §43(a) is used to allege false designation of origin, it is being used as a vehicle

for assertion of traditional claims of infringement of trademarks as discussed above, where courts

have applied the traditional rules of trademarks so that a protectable mark is required.

Under this reasoning, the Plaintiffs here must allege that they have a protectable mark in

order to bring a claim under 43(a) for false designation of origin.  See EMI Catalogue

Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc., 228 F.3d 56, 61 (2d Cir. 2000) ("To

establish a claim for trademark infringement based on false representation of origin, a plaintiff

must allege that its trademark is valid and eligible for protection, and that as a result of a

defendant's use of the mark there is the likelihood that an appreciable number of ordinarily

prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."); Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115 (2d Cir. 2001) (holding that in order to establish a claim for false designation of origin under the Lanham Act, a plaintiff must prove: (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between the plaintiff's good and the defendant's good); Energy Intelligence Group, Inc. v. UBS Fin. Servs., Inc., No. 08 Civ. 1497, 2009 WL 1490603, at *3 (S.D.N.Y. May 22, 2009) ("Like a plaintiff alleging trademark infringement, a plaintiff bringing a false designation of origin claim must show both that its mark is a protectable trademark and that defendants' use of the mark is likely to confuse consumers as to the source or sponsorship of plaintiff's product.") (internal quotations omitted).

The Plaintiffs have not alleged in the Amended Complaint that they have a protectable mark for BioPhotonics or any other mark in connection with the Medical Device. Therefore, although the Plaintiffs allege that through ABMM's website, the Defendants are falsely designating the origin as to the affiliation, connection, and association between the ABMM Sequencer and Genometrica's Medical Device, and this purposefully trades on the goodwill associated with Genometrica, this is insufficient to state a claim for false designation of origin. The Plaintiffs have failed to allege that Genometrica's or the Foundation's mark, trade dress, or trade name, is valid and eligible for protection. Although the Plaintiffs are asserting a specific type of false designation of origin claim, specifically a "reverse passing off" claim, this does not appear to alleviate this requirement. See Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 113 (E.D.N.Y. 2010) (finding that to prevail on a claim for false designation of origin, including "reverse passing off", a plaintiff first must prove that its mark merits protection).

Therefore, the Defendants' motion to dismiss the Plaintiffs' claims for false designation of origin—namely its Third and Fourth Claims for Relief—is granted. The causes of action asserted pursuant to 15 U.S.C. § 1125(a)(1)(A), Section 43(a)(1)(A) of the Lanham Act, are dismissed without prejudice.

**2. Count Eighteen**

Finally, the Defendants point out that Count Eighteen is blank in the Amended Complaint. The Amended Complaint contains a Seventeenth Claim for Relief and a Nineteenth Claim for Relief, but does not include an Eighteenth Claim for Relief. It appears that the Plaintiffs may have misnumbered their causes of action. In order to avoid confusion in future proceedings, the Court will not renumber the causes of action but rather will keep them consistent with the Amended Complaint. However, to the extent that there is an eighteenth cause of action, such a claim is hereby dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiffs' request for oral argument is denied; and it is further

**ORDERED**, that the Defendants' motion to dismiss for lack of standing is denied; and it is further

**ORDERED**, that the Defendants' motion to dismiss the Plaintiffs' federal unfair competition claims pursuant to 15 U.S.C. § 1125(a)(1)(A), Counts Three and Four in the Amended Complaint, is granted; and it is further

**ORDERED**, that the Plaintiffs' Eighteenth Claim for Relief is dismissed; and it is further

**ORDERED**, that the Defendants' motion to dismiss the Plaintiffs' other causes of action is denied; and it is further

**ORDERED**, that the Plaintiffs may file and serve amended complaint consistent with the

Court's findings above, within 20 days of the date of this Order.


**SO ORDERED.**
Dated: Central Islip, New York
January 31, 2013


_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge