```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3     ---------------------------X
                                 :
4     GENOMETRICA RESEARCH, INC.,  :
                                 :
5              Plaintiff,        :   11-CV-5802 (PKC)
                                 :
6          v.                    :   April 30, 2013
                                 :   Central Islip, New York
7     GORBOVITSKI, et al,        :
                                 :
8              Defendants.       :
                                 :
9     ---------------------------X

10
            TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
11           BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
                  UNITED STATES MAGISTRATE JUDGE
12

13    APPEARANCES:

14

15    For the Plaintiff:        PANAGIOTA BETTY TUFARIELLO, ESQ.
                                The Law Offices of P.B.
16                               Tufariello, P.C.
                                25 Little Harbor Road
17                              Mt. Sinai, NY 11766

18    For the Defendant:        ARTHUR MORRISON, ESQ.
                                11 Skyline Drive
19                              Hawthorne, NY 10532

20

21

22
      Court Transcriber:        MARY GRECO
23                              TypeWrite Word Processing Service
                                211 N. Milton Road
24                              Saratoga Springs, NY 12866

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

1          THE CLERK:  Calling civil case 11-5802, <u>Genometrica</u>

2  <u>v. Gorbovitski, et al</u>.  Please state your appearance for the

3  record.  Plaintiff?  You need to press the button.

4          MS. TUFARIELLO:  Good afternoon, Your Honor.  My

5  name is Panagiota Betty Tufariello, and I am with

6  Intellectual, the Law Offices of PB Tufariello, PC.  I'm here

7  this afternoon on behalf of the plaintiff, Genometrica

8  Research, Incorporated.

9          THE COURT:  Good afternoon.

10          MR. MORRISON:  Actually, good afternoon, Your Honor.

11  I'm Arthur Morrison.  I represent the interests of the

12  defendants in this matter.

13          THE COURT:  And good afternoon as well.  Well, it's

14  been a while, obviously, since we've seen each other so I want

15  to take a moment at least to recap for the record at least

16  where I perceive we are at this juncture.

17          First of all, you've just recently been notified I

18  see that the case is now reassigned to Judge Chin in Brooklyn

19  as a newly designated eastern district judge, district judge.

20  Looking back on this case, last March, and I don't mean this

21  most recent March, but last March, March 12, 2012, when we met

22  for the initial conference I issued a limited case management

23  order and directed that paper discovery go forward.  That was

24  to be completed by May 29th.  And January -- I'm sorry, June

25  15th was set as the deadline to amend pleadings.  Then with the

3

1   permission of Judge Spatt in his order of March 20, 2012, the

2   plaintiff was permitted to file an amended complaint and that

3   filing was made on April 2, 2012.

4        Subsequently, defendants moved for a second time to

5   dismiss the amended complaint, and that motion was filed on

6   April 21, 2012.  On June 14, 2012, the plaintiffs filed a

7   letter motion to compel responses to outstanding discovery.

8   And on June 24th, the defendants filed a motion for a

9   protective order.  I met with both sides on June 28th and both

10  the motion to compel and the motion for protective order were

11  granted to the extent set forth in the orders that I issued.

12        Then on August 5th, the defendants, that's 2012,

13  defendants field a motion for extension of time to complete

14  discovery.  I granted that request.  The next major event here

15  is January 31st of this year.  Judge Spatt, in ruling on the

16  motion to dismiss dismissed the unfair competition claims,

17  counts three and four of the amended complaint, along with

18  count 18, and denied the motion to dismiss in all other

19  respects.  At that time, Judge Spatt gave plaintiffs

20  permission to file a second amended complaint within 20 days

21  in accordance with his order.

22        Then on March 1, 2013, the defendants filed an

23  answer to the amended complaint, and I see there does not

24  appear to have been a second amended complaint ever filed.

25  And then on March 26, 2013 the defendants filed the motion for

4

1   extension of time to complete discovery, and that was granted.

2          And so now here we are, and the first thing I want

3   to find out from both of you is where's discovery at this

4   point?  So Ms. Tufariello, since you represent the plaintiff,

5   I'm going to let you go first.

6          MS. TUFARIELLO:  We did in fact receive documents,

7   and I should say not documents, but responses to our request

8   for documents, as well as responses to our interrogatories I

9   believe.  We have a number of issues with the responses that

10  were provided to us, namely some of the requests that we made,

11  defendants said that we represent the research foundation, and

12  therefore, those documents are in our control.  We do not.

13  And so we asked for whatever documents that would be

14  responsive.  We'd like to see them.

15         We're in the process of compiling a letter that

16  we're going to be sending to Mr. Morrison where we're going --

17         THE COURT:  This is a deficiency letter basically?

18         MS. TUFARIELLO:  I'm sorry?

19         THE COURT:  A deficiency letter?

20         MS. TUFARIELLO:  That is correct.  Because of the

21  number of requests for documents, as well as the number of

22  interrogatories, they're quite numerous, and we would like to

23  set the record for purposes, if necessary, of bringing a

24  motion to compel.  We're going to be laying out all the

25  requests for documents that we have issues with, what the

5

1   problems are, and we're going to try to work things out in

2   accordance with the rules before we actually bring it to your

3   attention.

4           So while we have received responses to our request

5   for documents, as well as our interrogatories, there are

6   deficiencies that we are in the process of wrapping up and

7   bringing -- and we will be bringing to Mr. Morrison's

8   attention.

9           THE COURT:  All right.

10          MS. TUFARIELLO:  It's our anticipation that we're

11  going to have that in Morrison's hand by next week.  This week

12  is holy week for Christian Orthodox, and I'm Greek Orthodox.

13  So Friday my offices will be closed and I'll be addressing a

14  lot of these issues next week when I get back to the office.

15          THE COURT:  All right.  Let me just take a look at

16  the calendar.  All right.  So you think by May 17th you would

17  have that letter to --

18          MS. TUFARIELLO:  Yes, Your Honor.

19          THE COURT:  -- opposing counsel?  All right.

20          MS. TUFARIELLO:  Yes.

21          THE COURT:  Then I'd like to set that as at least --

22  we need to put some parameters down here so that we --

23          MS. TUFARIELLO:  I agree.

24          THE COURT:  -- understand where we're going.  All

25  right.  So May 17th your deficiency letter will arrive to Mr.

6

1   Morrison.  All right.

2           Mr. Morrison, once you receive that, I'm going to

3   give you two weeks to have a meet and confer with Ms.

4   Tufariello to try to work out whatever these issues are.  All

5   right?

6           MR. MORRISON:  Thank you, Judge.

7           THE COURT:  That would put you at the 31st.  And

8   since Memorial Day falls in there, I'll give you the weekend.

9           MR. MORRISON:  I may need another week, Your Honor.

10  My client has been traveling.  She's going away out of the

11  country on the 7th, so could we have another week?  I don't

12  know if she's going to be back.  I have to confer with the

13  client on these documents.

14          THE COURT:  All right.  I'll give you till June 7th.

15          MR. MORRISON:  Thank you, Judge.

16          THE COURT:  So that meet and confer needs to take

17  place sometime between May 17th and June 7th.

18          MR. MORRISON:  Understood.

19          THE COURT:  Now, whatever you're not able to

20  resolve, if it comes to that, and if you intend to move for

21  relief from the Court, I'm going to give you until the 18th to

22  file any letter motions to compel that might be necessary.  So

23  that's June 18th.  Give me a ball park idea of approximately

24  how many documents you've got at this point if you know.  Have

25  you been Bates stamping them or did they come to you Bates

1   stamped?

2        MS. TUFARIELLO:  No, they did not, Your Honor, and

3   that's going to be one of the issues.  What Mr. Morrison did

4   in many of the requests for documents is he referred back to a

5   hard drive that he provided with me in conjunction with his

6   automatic disclosure statement back in March of 2012 when we

7   first appeared before you, and he keeps referring back to it.

8   Unfortunately, those documents are not Bates stamped.  He has

9   not identified which documents are responsive to which

10  request.  He has also, in the alternative pursuant to the

11  rules, the Federal Rules of Civil Procedure, he has not

12  provided me with any certification that they have been

13  providing as they are kept in the regular course of business.

14       THE COURT:  In the ordinary course of business.

15  Okay.  Let me stop you there for one minute.  What about that,

16  Mr. Morrison?  First of all, what did you give her?  I know

17  you gave her a disk, but how were those document compiled?

18       MR. MORRISON:  Well, Your Honor, in addition to

19  being -- they've added additional plaintiffs, the university.

20  They have all these documents.  Their own client has the exact

21  documents they're looking for from us.  So to begin with,

22  there was a report that was completed in October of 2011 to

23  the best of my knowledge.  We provided the complete report to

24  them as part of the initial discoveries.  They have those

25  documents.  Then since that time, since we made the second

8

1    motion to dismiss under 12(b)(6), they added in their amended

2    pleading the university.  The university is their client,

3    their plaintiff.  They're asking us for records that they

4    already have.  They can just reach out to the client and get

5    them.  It's not clear to us why they got to have them now

6    twice.

7            THE COURT:  Well look, I'll get to that.  Hang on.

8    I'll get to that.  But I'd like an answer to the question I

9    asked first --

10           MR. MORRISON:  Yes, Your Honor.

11           THE COURT:  -- and then I'll come back to this

12   issue.  These documents are apparently produced on a disk,

13   whatever it was you produced up to this point, produced on a

14   disk but they're not Bates stamped within the disk and I'm

15   trying to find out if these were copied from the records as

16   they are kept in the ordinary course of business, or were they

17   selected from various places in your client's records?

18           MR. MORRISON:  That's a fair -- may I just -- my

19   client is here.

20           THE COURT:  Yes.

21           MR. MORRISON:  I can ask her that right now.

22                    [Pause in proceedings.]

23           MR. MORRISON:  Your Honor, my client is standing

24   next to me and I want to make sure, since it's a scientific

25   matter, I'm speaking precisely and crisply.  As far as I

9

1  understand, and if I'm in error, I'd like her to correct me, I

2  understand from the report that was --

3          THE COURT:  Do me one favor if you would though

4  because it's important to me.  These conferences are all

5  digitally recorded and if anybody wants the transcript or I

6  need to see the transcript, I need to get you on the

7  microphone or it won't pick up.

8          MR. MORRISON:  Oh, yes, Your Honor.

9          THE COURT:  So if you could remain seated --

10          MR. MORRISON:  Would you sit next to --

11          THE COURT:   -- your client could have a seat,

12  there's no problem.

13          MR. MORRISON:  Yes, you can have a seat.  My request

14  then, Your Honor, is that she answer the question --

15          THE COURT:  All right.

16          MR. MORRISON:  -- directly because it comes from her

17  reports.

18          THE COURT:  Fine.  If you're authorizing her to do

19  so, that's fine.

20          MR. MORRISON:  Yes, Your Honor.  For accuracy.

21          THE COURT:  All right.  Can you just identify

22  yourself, ma'am?

23          MS. GORFINKEL:  I'm Vera Gorfinkel.  I am an

24  associate professor at the State University of New York at

25  Stonybrook and I used to be principle investigator on the

10

1  project, research project, which was granted to the

2  university, actually to the research foundation of the State

3  University of New York [unintelligible].

4       THE COURT:  Are you the person who collected the

5  documents that are on the disk that was given over to the

6  plaintiffs?

7       MS. GORFINKEL:  These are not the documents.  This

8  is progress report.  It's just scientific results we obtained

9  during years 2009 through 2011.

10      THE COURT:  Okay.  Well, hold on for a second.  When

11 I say documents, all I'm talking about are records, paper

12 records that are now apparently on this disk.  That's all I

13 mean.  So don't misconstrue what I'm saying.  The fact is

14 they're copies of materials, documents, records, whatever you

15 want to call them.  I'm asking you if you're the one who

16 gathered them and put them on the disk?

17      MS. GORFINKEL:  Yes, I'm the one who put this on the

18 disk, yes.

19      THE COURT:  Okay.  And how were they collected?

20      MS. GORFINKEL:  This disk is actually a copy of the

21 disk with the progress report which I handed in to the

22 research foundation for them to give it to Genometrica.  I did

23 it, as far as I remember, on October 5, 2011, and they sent it

24 to Genometrica in October 2011.

25      THE COURT:  All right.

1          MS. GORFINKEL:  October 12th, just one week later.

2          THE COURT:  All right.  But I need to get back to

3    the idea here.  Where did they come from?  Did you pull these

4    materials or documents or records out of file cabinets?  Were

5    they in an electronic database somewhere?  How were they

6    collected?

7          MS. GORFINKEL:  Those data were in electronic

8    format.  These are files, data files, designs, descriptions,

9    some are reports, interim reports prepared by my colleagues in

10   the course of this project.  All this was collected by me,

11   organized in a certain way.  Then I prepared -- I myself

12   prepared table of content which is not just table of content

13   but every item in the table is explained what it is --

14          THE COURT:  Okay.

15          MS. GORFINKEL:  -- and how to approach, and what is

16   the conclusion from this specific part of research.

17          THE COURT:  All right.  But let me just back -- I

18   know this may sound very minuscule to you and picayune, but

19   they're questions I need to ask you.

20          MS. GORFINKEL:  That's fine.

21          THE COURT:  All right.  When you pulled this

22   material together, it wasn't all in one place I take it.  You

23   say it was in electronic format, but it came from different

24   people who were working on this project?

25          MS. GORFINKEL:  Yes.

1          THE COURT:  The data came from different people?

2          MS. GORFINKEL:  Yes, of course.

3          THE COURT:  Okay.  And so how did you collect it?

4          MS. GORFINKEL:  I asked my colleagues to prepare

5  pulls of data files and make sort of description of every day

6  the collection.  So there is a pool of 100 files, and there is

7  -- every file is a result of some experimental work which is

8  done, but when you do experimental work, you write sort of --

9  it's called -- we call it read me.  So you describe what you

10  targeted, what [unintelligible], what was the conditions of

11  receiving these data.  So I asked my colleagues, several of my

12  colleagues to prepare data files, compose a pool of data files

13  with descriptions of what it was and how it was obtained.  And

14  when they gave me those data files, I looked through them and

15  made some comments in this table of contents so that for the

16  reader who's not experienced in the field, will be clear what

17  this data collection is for.

18          THE COURT:  All right.  How many entries are there

19  in the table of contents?

20          MS. GORFINKEL:  I don't remember exactly.  It was --

21          THE COURT:  Do you have just a rough approximation?

22          MS. GORFINKEL:  Maybe 15, 20.

23          THE COURT:  Okay.  All right.

24          MS. GORFINKEL:  I'm not sure.

25          THE COURT:  All right.

1          MS. GORFINKEL:  Not 100, not 100.

2          THE COURT:  All right.  All right.  Based on what I

3     just heard, Mr. Morrison, what you're at least going to have

4     to do here is identify for the plaintiff which folder or which

5     data set in this table of contents, which you're claiming are

6     responsive documents, what it refers back to.  So my question

7     was asked and you responded, or directed the attention back to

8     the disk.  You're at least going to have to identify what

9     segment in the table of contents, what folder, or whatever you

10    want to call it, what that -- why those documents, for

11    example, are responsive or identifying the documents are

12    responsive to the particular request that was made by the

13    plaintiff.  Understood?

14         MR. MORRISON:  Yes, Your Honor.

15         MS. TUFARIELLO:  One more item, Your Honor, since

16    we're talking about the items that are actually on the hard

17    drive, it's really not a disk, it's a hard drive because --

18         THE COURT:  Okay.

19         MS. TUFARIELLO:  -- there was a lot of information.

20    Some of the files that were actually included on the hard

21    drive are not readable in PDF format.  They are provided in a

22    format that unfortunately I do not have the software, nor does

23    my client have the software, nor do my -- the sister law firm,

24    Hofheimer, Gartlir and Gross who are also representing

25    Genometrica have the software necessary for us to read it.

14

1          THE COURT:  Do we know what software does read it?

2          MS. TUFARIELLO:  All they would have to do is

3    convert them to PDF files and resend them to us.  It was one

4    of the things that we were planning asking Mr. Morrison to

5    provide for us.  But the problem is we had to actually at

6    least locate them on the hard drive so we can give some sort

7    of direction to Mr. Morrison about which files we were

8    complaining about and which files we were not, because there

9    are identification strings for these files on the hard drive

10   that we are able to access but we can't actually open them

11   because they're not in a format --

12         THE COURT:  All right.

13         MR. MORRISON:  -- that we are actually able to read.

14         THE COURT:  All right.  I get it.  I'm assuming, and

15   certainly given the fact that these materials emanate from a

16   place like Stonybrook, that there is a capability of whatever

17   these particular documents are that she's going to point out

18   to you that their software won't read, there is a way to

19   convert them into a PDF document.

20         MS. GORFINKEL:  No.

21         THE COURT:  Okay.

22         MS. GORFINKEL:  Sometimes it's not possible because

23   these are designers' files and if you convert it into PDF the

24   designer software allows you to move parts, to play with them,

25   to see the same part from behind.  How can you do it with PDF?

1  I would have to generate hundreds of --

2          THE COURT:  Is there some other software that can be

3  used to do that that's compatible with what they have?

4          MS. TUFARIELLO:  They are special readers.  I'm

5  familiar with the software that Dr. Gorfinkel is referring to

6  and sometimes it's Solid State it's called, or Solid Works.

7  Sometimes it's AutoCad readers.  If they could forward us the

8  reader or a link that we can download the reader or a link

9  that we can download the reader, that may very well solve the

10  problem.  But we won't know what reader we need to download

11  unless they sent it to us, or give us a link, or give us some

12  information to open it up.  I'm fully familiar with the type

13  of software that Dr. Gorfinkel is talking about.

14          THE COURT:  All right.  Well, that will save you

15  some work if you can at least identify what the reader is that

16  they need to open this with.

17          MS. GORFINKEL:  I'm not sure if it's really

18  necessary because the filename always contains the extension

19  which exactly shows what kind of software is used.  See,

20  document, Word files, hair extension.doc.  Acrobat has

21  extension PDF and designer Solid Work has specific extension,

22  Designer Inventor has a specific extension.  I don't see

23  what's the problem.  Of course I can provide this information.

24  Judging by the extension of the file you can always know how

25  to read it.

1          MS. TUFARIELLO:  The electronic --

2          MS. GORFINKEL:  I will provide --

3          MS. TUFARIELLO:  -- protocol specifically says --

4          MS. GORFINKEL:  -- it.  I will provide the --

5          THE COURT:  One at a time, one at a time.  I'm

6     sorry.

7          MS. TUFARIELLO:  The electronic protocol, the

8     protocol for electronic discovery that we eventually filed

9     with the Court and Your Honor so ordered specifically says

10     that they are required to provide us with PDF files or

11     alternatively with some sort of mechanism by which we can open

12     it.  They're obligated under the order of this Court to do so.

13     We're willing to work with them and tell them give us a link

14     or give us -- we're not going to sit there and guess.  I did

15     try, I assure this Court, I did try to open it in different

16     modes, and I was totally unable to.

17          THE COURT:  All right.  Well, Mr. Morrison, you may

18     not have realized at the time what you were signing up for

19     when you signed the ESI agreement, but if that provision is in

20     there, you're going to have to abide by it.

21          MR. MORRISON:  I don't think we've had these

22     problems before.  It may be their equipment is not

23     sophisticated.  It may be --

24          THE COURT:  I'm not sure what the issue is but if

25     the agreement was give it to them in PDF format or in some

17

1   format that's readable by them, then you're going to have to

2   do that.

3           MR. MORRISON:  We will undertake, Your Honor --

4           THE COURT:  You'll talk further and if your client

5   needs to talk further with plaintiff's counsel, you should try

6   to get that worked out before you leave here today at least in

7   terms of how you're going to proceed.

8           MR. MORRISON:  We have the benefit of my client

9   here.  She's the most sophisticated one.

10          THE COURT:  Good.  So it's good she's with you and

11  you'll see what you can work out before you leave here today.

12  All right?

13          MR. MORRISON:  I will, Your Honor.

14          THE COURT:  Okay.

15          MS. TUFARIELLO:  Your Honor, if I may, the documents

16  that were in fact on the hard drive that were provided to us

17  are really non-responsive to about 75% of the remaining

18  requests for documents.  It would be responsive only to a very

19  limited number of requests for documents that relate to the

20  research that Dr. Gorfinkel in fact engaged in and eventually

21  completed.  There are a number of requests for documents for

22  financials, for accountings that were never provided to us

23  which of course we're going to be identifying in the letter of

24  deficiency by May 17.  But I don't want the Court to be

25  misinformed or misled into believing that that particular hard

18

1    drive did in fact provide --

2              THE COURT:  Contain everything you're looking for.

3              MS. TUFARIELLO:  -- us with all the information.

4              THE COURT:  No, I understand.

5              MS. TUFARIELLO:  Okay.

6              THE COURT:  I get it.  All right.  What else?

7              MS. TUFARIELLO:  There is one outstanding issue that

8    is extremely pressing right now that the Court really needs to

9    know because it may very well involve the Court.  If the Court

10   might recall, if Your Honor might recall, one of the reasons -

11   - I don't want to waste too much time with background

12   information, but here's the situation.  While this case was

13   filed, when we filed this, when we Genometrica on behalf of

14   Genometrica filed this case in November a few years ago, 2011,

15   we filed our complaint.  It was filed almost around the same

16   time, about a week before that, Professor Gorfinkel by and

17   through Mr. Morrison had filed a summons and notice in state

18   court.  In that summons and notice, when we received the

19   summons and notice, we made a demand for the complaint.  The

20   complaint was never given to us.  And instead, what happened

21   was Dr. Gorfinkel, who at that time was being represented by

22   Meltzer Lippe, instead of giving us a complaint in response to

23   the demand that we made, they made a motion and stayed -- in

24   fact were successful in putting the whole state case on the

25   back burner so to speak pending the outcome of Judge Spatt's

1  decision.  And in the process, in an affirmation in support of

2  the order to show cause at the state level, the attorney for

3  Dr. Gorfinkel, Ms. Jessica Mastrogiovanni, filed an

4  affirmation and in that affirmation she specifically said that

5  in the event Judge Spatt retained the federal case in his

6  court, Dr. Gorfinkel would dismiss the summons and notice at

7  the state level and file her claims as counterclaims in this

8  particular case here.  When Judge Spatt issued his decision on

9  January 31st, I took the decision and immediately sent it to

10  Meltzer Lippe because obviously the attorneys are different.

11  Meltzer Lippe was representing Dr. Gorfinkel at the state

12  level, and Mr. Morrison is representing Dr. Gorfinkel here.

13  So I sent the decision directly to Ms. Mastrogiovanni and I

14  informed her that pursuant to her affirmation as well as her

15  follow-up representations to the Court, because we were in

16  front of Judge Whelan in Suffolk County and then we were

17  transferred to Judge Gozilo's [Ph.] jurisdiction in his hands.

18  I said pursuant to your representations, it's time for you to

19  dismiss the summons and notice because we still haven't

20  received the complaint.  We only received the complaint a

21  couple of days ago, actually on Monday I believe.  And we have

22  no problem, notwithstanding the fact that the time to join

23  parties and do all the things to the pleadings has passed.  We

24  don't have any problem to stipulating to the inclusion of Dr.

25  Gorfinkel's claims as counterclaims in the federal action.

1            In response, instead of getting the dismissal and

2     seeing the claims of Dr. Gorfinkel's counterclaims in the

3     answer that was filed recently, instead Meltzer Lippe is being

4     replaced with Mr. Morrison, Mr. Rapp, and a new attorney on

5     the case, a gentleman by the name of Mr. Robert Greenberg.

6            It is our intent to bring a motion to dismiss the

7     complaint that was filed very, very recently on the basis of

8     estoppel because during the representations to the court at

9     state level, Ms. Mastrogiovanni admitted that the parties are

10    the same, the facts are the same and both state the underlying

11    facts.  And for purposes of judicial economy it would be

12    better if the whole dispute is in fact decided at the -- in

13    this court for uniformity of decision and all the other good

14    reasons why applications are merged.

15           We did notify Mr. Greenberg from the get go as soon

16    as we realized that Meltzer Lippe was no longer on the case.

17    We did inform Mr. Greenberg that it was their obligation,

18    based on Ms. Mastrogiovanni's representations to the state

19    court that it was time for them to dismiss the complaint and

20    we would again have no issue with the claims being brought in

21    as counterclaims in this case.

22           To date we have not received any answer.  And before

23    we started this hearing, I did inform Mr. Morrison once again

24    that if they did not follow through in accordance with the

25    representations that Ms. Mastrogiovanni made at the state

1  level, we would be making a motion to dismiss the complaint

2  there.

3         The reason I'm bringing all this to your attention,

4  Your Honor, right now is because we're in the process of

5  putting in a discovery schedule and I understand how important

6  it is to have a schedule that is going to get things done and

7  prepare us for trial.  I don't want to have a situation a

8  month from now or two months from now where either party is

9  trying to either remove the state case and bring it here, or

10 alternatively, move to amend to include these counterclaims.

11        If the Court wants to extend a little bit the

12 discovery plan at this point to accommodate for these disputes

13 between the parties in connection with the state claims, then

14 perhaps that would be something that the Court might decide to

15 engage in.  I'm not sure.  I'm just telling the Court because

16 it is a very, very hot item right now on my table, on my desk,

17 and I don't want to mislead the Court in any way into thinking

18 that we're moving along when in fact we have these other

19 procedural issues that are kind of hanging over our heads.

20        THE COURT:  All right.

21        MR. MORRISON:  Should I respond, Your Honor?

22        THE COURT:  You're certainly welcome to.  It's up to

23 you.

24        MR. MORRISON:  Thank you, Judge.  May I

25 procedurally, may I hand up a copy of the verified complaint

1    that was served?

2            THE COURT:  Thank you.

3            MR. MORRISON:  Let me explain as I understand the

4    facts here.  Now, I'm not Jessica Mastrogiovanni, I'm not part

5    of that law firm.  All we have to rely upon are documents that

6    are in the Supreme Court Suffolk County file, and they appear

7    to be quite different than what's allocuted by my colleague.

8    So we're trying to cooperate.

9            Now, working backwards, Your Honor will notice at

10   the end of it there are some fax receipts indicating that

11   Betty was served with these papers by overnight on April 26th.

12   There's a Federal Express receipt, there is a fax receipt,

13   there is an email also sent to her.  Our understanding based

14   upon what happened in state court is things have to happen

15   under a certain deadline which we relied upon from looking at

16   the court file.  We've had Mr. Robert Greenberg out in Suffolk

17   County attending calendar calls during the month of April to

18   comply with the two stipulations that were signed by other

19   lawyers.  So we have acted in the best of our ability to

20   conform with Suffolk County Supreme Court stipulations that

21   were so ordered by certain judges.

22           So I think we're dealing in good faith.  We worked

23   within the deadlines provided and we served the verified

24   pleading upon Betty and her office.  It was sent to the Court.

25   It's a filed document in that court.  It was all done within

1  the understanding of what was signed by the lawyers in that

2  case.

3          Now, in that file there appears to be in March a

4  court order and a stipulation.  I respect what Betty has said

5  about February.  There's an order to show cause that says we'd

6  like a stay for 60 days until Judge Spatt makes a decision.

7  But when they appeared in court a month later, they entered

8  into a different document that seemed to indicate that the

9  understanding, you had the right under that stipulation and

10  order to serve the various people in the interim while the

11  case was pending before Judge Spatt.  And then the time was

12  extended to answer in that case for a specific period of time.

13  It appears to be either ten or 20 days.  It's not clear.  But

14  we made copies of the entire file.  I have instructed Robert

15  to provide a copy today, and to the best of my knowledge, he

16  did so.  We can send her another copy if it's necessary.

17          The point I'm trying to make is that as far as we

18  understood what was happening, and there are two documents,

19  not just the order to show cause, but a subsequent document in

20  March of 2012 that permitted the answer to be served and filed

21  under certain circumstances and we believe we've complied with

22  those circumstances, and we in fact did prepare the answer,

23  verify it, filed it, and served it on my colleague by

24  overnight fax and everything else on the 26th.

25          There's been a reasonable suggestion made here that

1    both cases belong in this court.  We respect that.  So two

2    things can happen.  We can ask permission of this court to

3    remove the state court proceeding.  I don't think that she's

4    challenging the answer or what's contained in the answer.  She

5    just, for judicial economy, it makes a great deal of sense to

6    have the complaint in the state court become a counterclaim

7    over here.  So that we understand a respect.  What we have a

8    procedural issue is at best to remove it from that court to

9    here.  There's an application to be made.  We have an office

10   and we can make that application, we have [unintelligible] to

11   bring the case over here.

12        So I'm just looking for a mechanism, a methodology

13   to bring them both together that avoids a lot of this

14   procedural impasse.  And I'm open to suggestions and I'll do

15   whatever the Court directs.

16        THE COURT:  Well frankly, I'm not in a position to

17   be giving legal advice certainly.  Whatever you choose to do

18   is up to you.  I mean there are a number of ways this can be

19   done, not the least of which is removing it here and filing it

20   as a related case.  But you know, it depends on what the

21   ultimate game plan is here and I don't know what that is, and

22   frankly I'm not comfortable offering advice as to how anybody

23   should be achieving the ends they think are appropriate at

24   this point.  So I'm going to leave it at that and you'll

25   figure out what you need to do.  So I'm sure there are lots of

1  other lawyers out there who can give you advice as to how this

2  should be taken care of.

3          MR. MORRISON:  I think I may have misspoken.  I was

4  not really looking for advice, Your Honor, I was looking for

5  direction.  I think I know what to do.`

6          THE COURT:  Okay.

7          MR. MORRISON:  It would be normally removal.  My

8  colleague didn't want to have the time and expense to make the

9  application.  I think in our office we're prepared to do that

10 if it's deemed by consent, then the problem should go away.

11         THE COURT:  All right.  Well, I will leave that to

12 the two of you to work out whatever resolution one hopes you

13 can do by consent at this point.

14         MR. MORRISON:  I think so, Judge.  Now, in the

15 pleading itself, Your Honor, under state law there's a time

16 for them to answer, so whatever stipulation we have to make as

17 to extend their time to answer so that's all included because

18 we're going to move from state practice to federal practice

19 and they would have an opportunity to respond, or if it's a

20 counterclaim, respond to the counterclaim.  That would also

21 affect the discovery.  So I would like to put it into the mix

22 today.  I don't think there's a great objection from my

23 colleague to bringing the case over here, but I think we may

24 need some extra time for the discovery process once it's

25 involved.

 1            THE COURT:  Well, let me tell you what I am planning

 2   on doing.  I can only deal with what's in front of me that's

 3   my case at the moment and that's what I'm planning to do.  I'm

 4   going to put a discovery schedule in place.  But even when the

 5   case gets over here or comes over here in the form of a

 6   counterclaim, then you'll both get on the phone, call

 7   chambers, and set up a conference and we'll make whatever

 8   adjustments may be necessary at that point to the discovery

 9   schedule.  All right?

10            MR. MORRISON:  That's fair, Your Honor.

11            THE COURT:  Okay.

12            MS. TUFARIELLO:  Thank you, Your Honor.  And that

13   was the whole purpose of this conversation --

14            THE COURT:  All right.

15            MS. TUFARIELLO:  -- simply to alert the Court that

16   this was an issue that the Court may have to deal with going

17   forward.  And in view of the fact that the Eastern District is

18   moving towards a rocket docket --

19            THE COURT:  Yes.

20            MS. TUFARIELLO:  -- I wanted to make it very, very

21   clear that we may have this issue going forward.

22            THE COURT:  Well, that's fine.  I appreciate the

23   information from both of you.  And frankly, I'll probably get

24   in touch with Judge Chen to let her know what's going on so

25   she'll understand if we need to revamp some of the discovery

27

1    schedule as that becomes necessary.

2              MS. TUFARIELLO:  Okay.

3              MR. MORRISON:  May I have one more thing, Judge?

4              THE COURT:  This case may take a little longer than

5    otherwise we'd like to think since --

6              MR. MORRISON:  I don't wish to forget, Your Honor.

7              THE COURT:  -- once the case is --

8              MR. MORRISON:  I'm sorry.  I didn't want to

9    interrupt you.  May I add something?

10             THE COURT:  Go ahead.

11             MR. MORRISON:  Thank you.  We are next in state

12   court on a motion for a stay to extend the time for all of

13   this.  That's on Monday the 6th.  I will be in state court at

14   that time.  I think our request would be we have a verified

15   complaint.  Under state law, we have ten days to amend it.  So

16   we may be amending that document within the days and I may be

17   -- I will be appearing in Suffolk Supreme Court in the motion

18   part on the 6th.  So we will inform the state court judge

19   what's happening --

20             THE COURT:  Okay.

21             MR. MORRISON:  -- at the same time.  I think we have

22   that duty.  It's a state court proceeding.

23             THE COURT:  All right.

24             MR. MORRISON:  Thank you.  I just want my colleague

25   to know that.

1          THE COURT:  That's fine.  What I was about to say,

2   and part of the reason I would notify Judge Chen at this point

3   is all of our cases, once they hit the three year mark, are

4   automatically on the watch list so to speak in Washington.

5   They have to be reported.  And so there has to be obviously a

6   good reason why a case would extend into the 36 month and move

7   forward from there.  Right now based on what I have in front

8   of me, we're not going to hit the 36 month mark.  However,

9   based on what I'm hearing, that may change and there's no way

10  for anybody to predict that until I see what happens.  And as

11  I said, I'm not going to rule on anything that's not in front

12  of me at the moment.  And so from here on, I'm just going to

13  proceed to get the discovery schedule in place.  And as I

14  said, if and when the case gets here, you'll both get on the

15  phone and call chambers, set up a conference and we'll move

16  from there.  All right?

17          All right.  Let me go back for a minute.  We have a

18  process set up now for the deficiency letter to go out, the

19  period of time for the meet and confer, and then the deadline

20  to file any motions to compel or any other motions that you

21  deem are appropriate at that point.  I've also directed that

22  since the documents are not Bates stamped and based on the

23  information that I received from one of the defendants, the

24  professor here, this afternoon based on the way these were

25  collected, I've directed defendant's counsel to go back and

1  line up their responses that have been provided and that will

2  be provided to designate what item or folder in that table of

3  contents that was provided the specific response and the

4  documents correlate to.  And I put that in the order that goes

5  up later today as well.  More likely tomorrow at this rate.

6         Now, you're also going to continue a discussion

7  since apparently there's been no response according to

8  plaintiff's counsel with regard to the financial data.  And so

9  you'll make that part of your meet and confer, and I assume

10  part of your deficiency letter as you just stated.

11         So that brings us up to June 18th at this point.  And

12  I suspect there may be some things that you can't agree on,

13  although I certainly hope there's some movement here and

14  there's just some agreement so that the information gets

15  produced.

16         What I want to talk about for a moment are

17  depositions and I'd like to hear from each of you whose

18  depositions you intend to take in the case.  So Ms.

19  Tufariello, why don't you go first?

20         MR. MORRISON:  Your Honor, we omitted one thing, I

21  say respectfully.  We had served demands upon them and they

22  did not respond to them, so --

23         THE COURT:  When did you serve it?

24         MR. MORRISON:  Within the time line we've had here.

25  She just didn't respond.  We have received nothing from them.

30

1  So before we get to the depositions, within the earlier time

2  line we served demands for interrogatories and demands for

3  documents.

4          THE COURT:  Well, hold on for one minute.

5          MR. MORRISON:  There was some indication from her

6  office they were not going to do that until they were

7  satisfied about something else, if I understand her correctly.

8                  [Pause in proceedings.]

9             [Judge's microphone no longer operating.]

10         THE COURT:  All right.  So we're looking at case

11  management [inaudible] took place on March 12th of last year

12  called for the first round of document demands,

13  interrogatories to be served by April 13th and responses to be

14  served by May 29th.  So apparently defendant's counsel didn't

15  even receive any responses to his discovery demands, so Ms.

16  Tufariello, tell me what you [inaudible].

17         MS. TUFARIELLO:  Okay.  We did receive a request for

18  documents.  I don't recall if they were interrogatories.  For

19  purposes of this meeting I would be willing, just for purposes

20  of this meeting because I don't have my files with me, to say

21  that perhaps interrogatories were served upon us as well,

22  although I don't recall them.  They were served upon us

23  significantly later, after the dates that the Court had set on

24  the calendar.  Upon receipt, we actually sent emails to Mr.

25  Morrison and informed him that as far as we were concerned,

31

1   these requests for discovery were inappropriate and we asked

2   him to withdraw them.  And we also informed him to give us a

3   call and talk to us.  We didn't hear from him.  We also said -

4   -

5           THE COURT:  Let me stop you here for a second.

6           MR. MORRISON:  Okay.

7           THE COURT:  Mr. Morrison, when did you serve the

8   demands?

9           MR. MORRISON:  They were timely, Judge.  I don't

10  have it in front of me right now.

11          THE COURT:  By April 13th?

12          MR. MORRISON:  We believe them to be timely.  And I

13  spoke to her on the phone.  She gave me a different reason

14  that she just wasn't going to do it.  I think her issue was

15  that she wanted to first see the documents -- there was

16  something else she wanted to see first before she was going to

17  respond to them.  That was my understanding of it and --

18          THE COURT:  All right.  Well, there's a critical

19  point here and that is in the case management order it said

20  very clearly you had to serve by the dates I gave you and if

21  you weren't going to be able to serve by that time, you need

22  an extension and you had to come back to the court to get one.

23          MR. MORRISON:  I understand that.  My understanding

24  was that was not the issue.  We're very well structured in

25  the office.  The notices went out, and I called her and said

1  where are they?  And then I got this other story that we're

2  not going to give them to you because we need something else.

3  It was something like that.

4          THE COURT:  All right.  I'm assuming when you served

5  these you have all the proof of services?

6          MR. MORRISON:  Oh, we do, Your Honor.  I can email

7  it to Your Honor or fax it to you.

8          THE COURT:  Okay.  All right.  [Inaudible].

9          MR. MORRISON:  I just want my responses.

10          THE COURT:  Well, I'm trying to get to the bottom of

11  this.  Go ahead.  So you're saying --

12          MS. TUFARIELLO:  I'm not exactly --

13          THE COURT:  -- you didn't get them, you didn't get

14  them on time.

15          MS. TUFARIELLO:  That is correct, Your Honor.  I'm

16  sitting here because I really don't know how to respond to the

17  misrepresentations that are being made to this Court right now

18  and words being put in my mouth.  The requests for discovery

19  were provided to us after the deadline.  I don't recall the

20  date right now.  I'd be more than happy to provide the Court

21  with my receipt of the documents, when I received them, my

22  response which was pretty adamant that I was not going to be

23  responding because these were provided to us way after April

24  13, Your Honor.  I don't remember the exact date but they were

25  provided to us way after April 13.  I asked counsel to

1   withdraw it for that reason.  I never heard back from them.

2          THE COURT:  All right.  Well, here's what we're

3   going to do.  Mr. Morrison, you're going to send me whatever

4   proof you have of confirmation of service of those requests

5   and when that was done.  And Ms. Tufariello, you're going to

6   send me whatever you can show me as to the receipt date when

7   you got them.  All right?

8          MS. TUFARIELLO:  Yes, Your Honor.

9          THE COURT:  Today is Tuesday, so I want the filings

10  Monday at the latest.

11         MS. TUFARIELLO:  Your Honor, as I indicated at the

12  very beginning, it's Greek Orthodox Easter.

13         THE COURT:  All right.  Well, you're observing.

14         MS. TUFARIELLO:  Yes.

15         THE COURT:  Okay.  When are you back in the office?

16         MS. TUFARIELLO:  I will be back on Monday, so I'll

17  probably be able to get it out to you by Wednesday.

18         THE COURT:  All right.  So next Wednesday.

19         MS. TUFARIELLO:  Just make sure.

20         THE COURT:  All right.  Let me just say, and I'm not

21  presuming anything here, but Mr. Morrison, if it turns out

22  when you go back that they were served any period of time

23  after April 13th you're going to have to do a double check and

24  [inaudible].

25         MR. MORRISON:  I understand.  We may have to seek an

34

1   extension if she -- it's not my recollection.  She got them

2   and there was another issue that she raised at the time.

3          THE COURT:  All right.  Well, you go back and check

4   your files, all right?

5          MR. MORRISON:  I will, Your Honor.

6          THE COURT:  All right.  I'm not making any ruling on

7   this until I get both the sets of information.

8          MR. MORRISON:  In the meantime, would you also

9   consider that we've had a second set of pleadings.  The case

10  has been expanded.  It may be necessary just to start the

11  discovery process anew on account of the new issue that's been

12  raised.  We have a new plaintiff in the case.

13         THE COURT:  Well, there's nothing to prevent either

14  side from serving supplemental demands based on the fact that

15  there's a new pleading.

16         MR. MORRISON:  I understand.

17         THE COURT:  So I'd like to, you know, I'd like to

18  have some order involving what you're doing here which means

19  it was first set out, and those haven't been responded to, I

20  want to get to the bottom of why that's the case.

21         MR. MORRISON:  That's fair, Judge.

22         THE COURT:  You certainly can serve supplemental

23  demands that go to the new issues that are raised, or the new

24  parties that are raised.  But I certainly don't want you

25  repeating anything that went out in the first one.

1          MR. MORRISON:  Would Your Honor consider one thing?

2    It becomes important to us and to my client.  After Judge

3    Spatt's most recent decision, we're left with one federal

4    unfair competition claim and the bulk of the claims,

5    everything else is state based claims which -- so we've spent

6    a great deal of time and Your Honor's time here covering that

7    one theory with all these records from the university and

8    everything else.  But in the real world, this case

9    predominantly involves state law claims.  And now we're

10   bringing three more here.  So I'm saying -- so the discovery

11   process right now is going to really be relating to state

12   based claims.  That's where we --

13          THE COURT:  Well, that may be the case.  As I said,

14   we're going to impose some order in the process here.  You

15   have an original set of demands that went out that should have

16   been responded to.  And I need to get to the bottom of what

17   actually happened with those.

18          MR. MORRISON:  Yes, Your Honor.

19          THE COURT:  You're entitled to another set,

20   supplement those demands based on the new claims and/or new

21   parties who came in as a result of the amended complaint.

22   You'll also get another crack at this if you need it in light

23   of transferring the case over to the state court.  But that's

24   how the process works here and that's how it's going to be

25   done.

1          MR. MORRISON:  Since it is a holiday season, Judge,

2    there's like an epiphany here.  This case may really belong in

3    the state court since there's only one federal claim.  The

4    rest of these cases really belong --

5          THE COURT:  That may be the case, but it's enough to

6    maintain federal jurisdiction.  So I don't know what you want

7    me to do about that.

8          MR. MORRISON:  No, I'm making an observation, Judge.

9          THE COURT:  Okay.

10          MR. MORRISON:  But we've spent so much time on the

11    federal case which is the smallest part of what's happening in

12    the theory of the case.

13          THE COURT:  Well look, I'm not so sure [inaudible]

14    necessarily agree with you on that interpretation.  Maybe she

15    does.  But it is what it is.  And as I said, we're going to

16    impose some order or process here [inaudible].

17          MR. MORRISON:  That's fair, Judge.  Thank you.

18          THE COURT:  All right.

19          MS. TUFARIELLO:  Your Honor, just for the record --

20          THE COURT:  Yes.

21          MS. TUFARIELLO:  -- since we're busy making it,

22    there is not one federal claim.  There's also a claim for

23    patent infringement, Your Honor, which is very serious.  It's

24    one of the first causes of action that we alleged in our

25    amended complaint.  That was one of the reasons why we did

1   bring in under our exclusive license agreement the research

2   foundation who happens to be the owner of patents that we

3   believe certain of the defendants have actually infringed

4   upon.

5            THE COURT:  [Inaudible].

6            MS. TUFARIELLO:  So just for the record.

7            THE COURT:  Okay.  Well, and I know that you'd

8   rather not talk about this today but I do want to hear at this

9   point -- and again, I'm not prejudicing anybody's rights here

10  today, but I want to get some idea as to whose depositions you

11  will be needing to be taken on behalf of your clients.  So let

12  me start with Ms. Tufariello.

13           MS. TUFARIELLO:  Well, right now we most definitely

14  will be taking the deposition of Mr. Gorbovitski, Boris

15  Gorbovitski, Ms. Vera Gorfinkel, Dr. Gorfinkel, whoever they

16  will identify as a 30(b)(6) representative, but Advanced

17  Biomedical Machines, Inc., ABMM.  We will be subpoenaing and

18  requesting the deposition of Dr. Gorfinkel's son, Michael

19  Gorbovitski.  We plan on having at least two experts,

20  financial auditor who will be looking into ABMM's finances as

21  well as Dr. Gorfinkel's finances, as well as Dr.

22  Gorbovitski's, or Mr. Gorbovitski, I'm not sure Mr.

23  Gorbovitski holds a Ph.D.  So we definitely will have a

24  financial auditor.  Right now we're interviewing at least two

25  that I'm aware of.  We will also have a patent infringement

38

 1  expert, someone who will come in and explain to the Court on

 2  the one hand teach the Court a little bit about the technology

 3  associated with the patents that are at issue and --

 4          THE COURT:  [Inaudible] construction [inaudible].

 5          MS. TUFARIELLO:  Exactly, exactly.  So we do

 6  anticipate a Markman Hearing.

 7          THE COURT:  Yes.

 8          MS. TUFARIELLO:  That is, without really getting

 9  into the nitty gritty, I'm sure there are others that my co-

10  counsel at Hofheimer, Gartlir and Gross probably have thought

11  up in the interim and I haven't had an opportunity to discuss

12  it with them.  But at the most superficial level, these are

13  the individuals.  If there are additional individuals -- for

14  example, we know for a fact that there are certain post-doc

15  personnel, people who are working towards doing their

16  fellowships or earning Ph.Ds or post Ph.Ds studies working

17  with Professor Gorfinkel.  If they were involved in these, in

18  the technology associated and at issue in this dispute, more

19  likely than not we're going to be requesting their depositions

20  as well.  And it's my understanding that there's an extensive

21  staff at the foundation, at the university.

22          THE COURT:  All right.  The other thing that I want

23  everybody on notice of, I don't want to hear that anybody is

24  not available during the summer because school is out or

25  [inaudible].  So cooperate.  You folks need to talk to each

39

1    other or at some point in the not too distant future we're

2    going to have a conference to talk about this and you should

3    be prepared, at least in your own minds, a time frame in which

4    you're going to serve these notices of depositions so people

5    have sufficient time to prepare.

6            All right.  Mr. Morrison, what about any depositions

7    that you intend to take on behalf of your client?

8            MR. MORRISON:  Your Honor, I'd just like to comment

9    on the patent infringement issue.  Their patents are owned by

10   the university and not by this plaintiff, Genometrica.  They

11   have license agreements.  They're enforcing these license

12   agreements.  There was a previous claim made at the university

13   of patent infringement against Ms. Gorfinkel brought by Betty

14   and the same lawyers and the same people, Genometrica, and it

15   was decided that there was no patent infringement.  We may be

16   resisting the issue, raising this issue again when there's

17   already been a determination of that by the university that

18   there was no patent infringement against either one.

19           THE COURT:  And that determination was made in a

20   federal court?

21           MR. MORRISON:  Actually, it was made by the

22   university.  They raised the same issue before.  So there

23   would be issue preclusion, Your Honor.  And it's equitable

24   estoppel.  The same issue was raised that they raised here.

25           THE COURT:  Okay.

40

1          MR. MORRISON:  So that is part of the amended

2    complaint, the complaint that's in state court.  So that's

3    going to end up over here.  But I'm saying this, it's in the

4    case, so we wish to disclose that to Your Honor.

5          As far as our witnesses are concerned --

6          THE COURT:  Let me just -- we're going to talk more

7    about what you're going to do with that procedurally the next

8    time we have a conference.

9          MR. MORRISON:  Thank you.

10          THE COURT:  I want to make sure that if there is

11   [inaudible] to rule on that issue that that [inaudible].  All

12   right?

13          MR. MORRISON:  Okay.  I may have to bring some sort

14   of an application to -- here's the thing.  The university that

15   they've named, they were asked to sign a form which they

16   declined to sign and they were named as a party plaintiff

17   based upon the license agreement.  They have indicated they

18   don't want to stay in this case, they don't want to be a party

19   plaintiff.  They have no grievance against their distinguished

20   Professor Gorfinkel.  So we have a mechanical methodology as

21   to how to get them out of the case.  They don't want to be in

22   the case and they've indicated they don't belong in this case,

23   and they've indicated that to the other side.  They indicated

24   it to us anyway.

25          THE COURT:  All right.

41

1          MR. MORRISON:  So that's another issue we'd like

2   resolved.  We have a reluctant plaintiff.

3          THE COURT:  All right.

4          MR. MORRISON:  Okay.

5          MS. TUFARIELLO:  Your Honor, if I may?

6          THE COURT:  To that issue, we're going to have

7   plenty of time to talk about that at the next conference, so —

8   —

9          MS. TUFARIELLO:  Okay.

10         THE COURT:  -- unless there's something that's

11  really critical, I'd rather just focus right now on what we're

12  trying to get accomplished today.

13         MS. TUFARIELLO:  Your Honor, just very, very

14  briefly.  They had a bite at the apple.  They could have made

15  that argument when we amended the complaint and alleged patent

16  infringement.  If they had reason to believe that the

17  foundation's decision not to proceed against Professor

18  Gorfinkel for patent infringement, they could have brought

19  that out if it had an issue preclusion effect right in the

20  first instance when they brought their motion to dismiss the

21  amended complaint that was filed in response to the first

22  motion to dismiss.  So they've already had two bites at the

23  apple so to speak for this so-called issue preclusion.

24         By way of background, Your Honor --

25         THE COURT:  That may be something that pops up again

42

1  a summary judgment anyway, so we'll see what happens.

2          MS. TUFARIELLO:  Okay.  By way of background, our

3  exclusive license agreement obligated Genometrica to in fact

4  inform the research foundation if Genometrica believed that

5  there was someone who was infringing or had infringed in its

6  opinion the patents.  The foundation had 30 days to take

7  action, either respond or by its silence communicate that it

8  wasn't going to be doing anything.  As soon as the foundation

9  received notification, they did nothing.  They never informed

10 us that they were going to be proceeding against Professor

11 Gorfinkel and ABMM and Mr. Gorbovitski.  And as a result, it

12 triggered that clause in the license agreement that permitted

13 us to assert the patent infringement lawsuit against the

14 defendants that we have made.

15         THE COURT:  All right.  Well, I'm going to forewarn

16 Judge Chen that she's looking forward to a lot of motion

17 practice here.  All right.  Let's talk about the depositions

18 the defendants are going to take.

19         MR. MORRISON:  Well, we have served -- the witnesses

20 would be Ralf Vayntrub.  He's the --

21         THE COURT:  Spell that for me.

22         MR. MORRISON:  V-A-Y-N-T-R-U-B.  He's the -- he's

23 been served and he's in the -- he's the principal of Invar

24 Consulting.  He's the principal of Genometrica, Limited.  He's

25 central to this whole controversy.

43

1          THE COURT:  All right.  And you said he's been

2     served with a notice of deposition?

3          MS. TUFARIELLO:  No.

4          MR. MORRISON:  Well yeah, we can also designate him

5     because he's a principal of Genometrica.  He's one of the

6     founding partners, so --

7          THE COURT:  No, I get all that.  I'm just saying did

8     you notice his deposition?

9          MS. TUFARIELLO:  No, we didn't.  We were waiting for

10    today, Judge.

11         THE COURT:  All right.  Who else?

12         MR. MORRISON:  So Invar, and then Genometrica

13    itself, and then Genometrica Research.  And then we have a

14    peculiar thing that's happened here, Judge.  I've left it till

15    last.  These gentlemen, the co-counsel's law firm have

16    actually interviewed Boris Gorbovitski at the offices of his

17    attorney and took statements from him, and there's an issue of

18    disqualification of that law firm.  Before this litigation

19    began, two of their partners met with partners of Meltzer

20    Lippe and they communicated with them and took statements from

21    my client, discharged him as an officer and director of

22    Genometrica, asked for an accounting of his work, and then

23    took that information down and it's become part and parcel of

24    this litigation.  It's part of the involved complaint.  So

25    they are witnesses.  So we're going to call for the lawyers to

44

1   testify in this case as to their interrogation and taking of

2   documentation from a defendant in this case, Boris

3   Gorbovitski.  So one of our additional motions would be we're

4   going to call for the testimony of that law firm, of the

5   Hofheimer Law Firm and its partners, Mr. Klein and his other

6   colleague and also to disqualify.  I don't believe they can be

7   attorneys in this case and be witnesses at the same time.

8            THE COURT:  Okay.

9            MR. MORRISON:  So --

10           THE COURT:  Well, you'll make your motion to

11  disqualify them.

12           MR. MORRISON:  I will, Your Honor.

13           THE COURT:  [Inaudible].

14           MR. MORRISON:  So Judge Chen has much to do.

15           THE COURT:  [Inaudible].  What else?

16           MR. MORRISON:  I would need some time, Judge.  I

17  wasn't --

18           THE COURT:  All right.

19           MR. MORRISON:  If I can supplement the list, I'll do

20  it.

21           THE COURT:  All right.  Well, here's what I want you

22  to do.  Once I get to June 18 in particular, which is the

23  deadline for you to submit any motions [inaudible], if I get

24  motions or if I don't get motions, from that date I'm going to

25  set up the next conference date and I want to take a look at

1　any motions I get provided first so [inaudible].  But at that

2　conference, I'm directing you to be prepared.  First of all,

3　I'm not sure what's going to happen in the interim with regard

4　to the state court case, but if there is going to be further

5　paper discovery, and I use that term loosely, or supplemental

6　demands to be made, you're going to be prepared to talk to me

7　about that and we're going to set deadlines for that.  And

8　then I'm going to give you a time frame in which the

9　depositions will be taken [inaudible] take it up again at the

10　next conference.  So I'll just forewarn you because I want to

11　make sure everybody is prepared and you've spoken to the

12　people who are involved in terms of making sure people get

13　word and they can make themselves available for deposition

14　process as well.  And [inaudible] to move things along.  All

15　right?

16　　　　　　　MR. MORRISON:  Your Honor, may we serve the list of

17　experts in the meantime?  We're concerned.  Are we permitted

18　to do that between now and June 18th?  We have experts that we

19　want to bring and we also have supplemental responses.  May we

20　prepare and serve them before June 18th?

21　　　　　　　THE COURT:  Well, let me make sure I understand what

22　you're asking.  You said you have experts you want to use?

23　　　　　　　MR. MORRISON:  Yes, but I'd like -- again, it's

24　summer, so we have to tell them now for their schedules.

25　They're from -- one of them is at Stanford in California and

46

1  we have to arrange and tell them and notify them and provide

2  their qualifications.  They may want to examine them, take

3  depositions of them.  So I think it's pretty important.  We'd

4  like to put that -- do that between now and June 18th.

5          THE COURT:  Okay.  Well, let me make sure I

6  understand what you're saying.  Are you asking to have a date

7  certain that your experts serve their expert reports and all

8  their disclosures?

9          MR. MORRISON:  I just want to notify them now that

10 we intend to call these experts and notify them --

11         THE COURT:  You just want to disclose who the

12 experts are?

13         MR. MORRISON:  And I also want to disclose that we

14 also will provide additional supplemental disclosures between

15 now and -- I just don't want to lose the next month and a

16 half.

17         THE COURT:  [Inaudible].  Look, if you want --

18 there's nothing that prevents you from serving the disclosures

19 of who the experts are on plaintiff's counsel at any point.

20 I'm not preventing you from doing that, so go ahead.

21         MR. MORRISON:  It's a demand, Your Honor, of --

22         THE COURT:  We're going to at some point set a

23 separate schedule for expert discovery generally to serve

24 reports, to serve all the disclosures referring to Rule 26.

25 We're not anywhere near that at this juncture, but if you want

47

1   to proceed to identify your experts and disclose who they are

2   to plaintiff's counsel, go ahead.

3          MR. MORRISON:  Also, there's some issue that she's

4   not getting documents from us.  I'd like to serve the document

5   demands and the interrogatories are very important to us, and

6   do it between now and the 18th, Your Honor.

7          THE COURT:  You mean a supplemental demand?

8          MR. MORRISON:  Yes, Your Honor.

9          THE COURT:  Go ahead.  I'm still up in the air

10  about, I told you, about a decision I'm going to make with

11  regard to the first round, until I get this information that

12  you need to provide me with.

13         MR. MORRISON:  I just don't want the same issue that

14  we didn't get them again and --

15         THE COURT:  Look, there's nothing preventing you

16  from serving -- look, from the moment the amended complaint is

17  filed and the answer was filed, there's nothing to prevent you

18  at that point from serving any supplemental.

19         MR. MORRISON:  Thank you.

20         THE COURT:  Okay?

21         MR. MORRISON:  Thank you.  It's clear.

22         THE COURT:  So go ahead.

23         MR. MORRISON:  That's perfectly clear.

24         MS. TUFARIELLO:  Your Honor, if I may?

25         THE COURT:  Yes.  Just give me one second.

48

1          MS. TUFARIELLO:  Sure.

2                    [Pause in proceedings.]

3          MR. MORRISON:  Some water?

4          MS. TUFARIELLO:  Thank you.

5          THE COURT:  Yes, go ahead.

6          MS. TUFARIELLO:  Your Honor, I just want to make

7    sure the record reflects clearly that Mr. Morrison, if he

8    wishes to serve our firm with supplemental requests, they

9    would be supplemental requests and not --

10         THE COURT:  He already said that.

11         MS. TUFARIELLO:  -- copies of the original requests

12   --

13         THE COURT:  Understood.

14         MS. TUFARIELLO:  -- that were sent to us.

15         THE COURT:  That's understood.  Now, whatever

16   supplemental discovery is to be conducted by either side goes

17   to the additional [inaudible] or causes of action asserted in

18   the amended complaint and the [inaudible] asserted in the

19   amended complaint and that's it.  All right?  All right.  Is

20   there anything else we need to address for today's purposes,

21   Ms. Tufariello?

22         MS. TUFARIELLO:  As of the moment, the most pressing

23   were the deficiencies, discovery, so at this moment I can't

24   think of any others but I'm sure by June 18th we'll have plenty

25   to deal with.

1          THE COURT:  All right.  And you'll be hearing from

2   me shortly after June 18th about the next conference as well,

3   so --

4          MS. TUFARIELLO:  Okay.  All right.

5          THE COURT:  Mr. Morrison, anything you want to

6   address?

7          MR. MORRISON:  I want to say thank you.

8          THE COURT:  All right.

9          MS. TUFARIELLO:  Indeed.

10          THE COURT:  Go out and have a nice dinner.  It's

11   almost 6:30.  It's everybody's time to eat.  All right?

12          MS. TUFARIELLO:  All right.

13          THE COURT:  Have a good evening.  I'll put this into

14   an order.  I'm pretty sure it's not going out tonight, but it

15   will go out tomorrow.  All right?

16          MS. TUFARIELLO:  Okay.  If we need to get a copy of

17   the transcript --

18          THE COURT:  Yes.  If you want that, I will -- let me

19   know now.  I'll have my courtroom --

20          MS. TUFARIELLO:  I would like to get a copy of the

21   transcript.

22          THE COURT:  -- deputy [inaudible] --

23          MR. MORRISON:  Order a copy of the transcript for

24   the --

25          THE COURT:  All right?

50

1          MS. TUFARIELLO:  Yes.

2          MR. MORRISON:  We'll order this --

3          MS. TUFARIELLO:  They'll call us tomorrow for the

4   particular --

5          THE COURT:  Mary Ryan, who is my courtroom deputy,

6   will be in touch with you tomorrow.

7          MS. TUFARIELLO:  Very good.

8          THE COURT:  All right?

9          MS. TUFARIELLO:  Thank you, Your Honor.

10          THE COURT:  All right.  Mr. Morrison, do you have

11   the same request or not?

12          MR. MORRISON:  Yes, I would like the transcript.

13          THE COURT:  Okay.  So I'll have her call you as

14   well.  All right.  As I said, have a good evening.

15          MS. TUFARIELLO:  Thank you.  You too, Your Honor.

16                    *  *  *  *  *  *

17

18

19

20

21

22

23

24

25

51

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                              _____

6                                        Mary Greco

7   Dated:   May 3, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25