UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- :
                                                              :
GENOMETRICA RESEARCH INC., and THE          :   Case No. 11-cv-05802 (PKC) (AKT)
RESEARCH FOUNDATION OF THE STATE            :
UNIVERSITY OF NEW YORK (in accordance       :
with Article VII of its Exclusive License         :
Agreement dated as of July 1, 1999 with          :
GENOMETRICA RESEARCH INC.),                  :
                                                              :
                        Plaintiffs,                           :
                                                              :
            -against-                                         :
                                                              :
BORIS GORBOVITSKI, VERA GORBOVITSKI         :
a/k/a VERA GORFINKEL, and ADVANCED          :
BIOMEDICAL MACHINES INC.,                     :
                                                              :
                        Defendants.                          :
                                                              :
------------------------------------------------------------- :

## DECLARATION OF RICHARD G. KLEIN IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY

I, RICHARD G. KLEIN, hereby declare under penalty of perjury pursuant to 28 U.S.C.

§ 1746 that the following is true and correct:

1.      I am an attorney duly admitted to practice before the Courts of the State of New

York and am a partner at Hofheimer Gartlir & Gross, LLP, co-counsel for Plaintiff Genometrica

Research, Inc. ("Genometrica"). I have not appeared in this matter as counsel for Genometrica

Research. I am fully familiar with the facts set forth herein based upon my personal knowledge

and my review of the client files that my firm keeps on this matter.

2.      Beginning in or about June 2011, I began a corporate audit of Genometrica's

business, corporate, and financial activities for the period July 2008 through the then present

time. I was directed to conduct this audit by Genometrica Ltd., the parent company of

Genometrica, and was given broad authority to investigate the activities of Genometrica, including those of its then sole officer and director, Defendant Boris Gorbovitski ("Dr. Gorbovitski").

3.      I initially interviewed representatives from Genometrica Ltd. and reviewed certain documents concerning the July 2008 purchase of Genometrica by Invar Consulting Ltd. from, inter alia, Dr. Gorbovitski and Defendant Vera Gorfinkel ("Dr. Gorfinkel"). These attorney-client privileged communications and the documents provided me with background on the nature of Genometrica's business.

4.      My first introduction to Dr. Gorbovitski was on June 16, 2011. I called him, introduced myself, told him that my firm had been retained by Genometrica Ltd., and briefly described the corporate audit we were conducting. I requested a meeting with him to understand how, as the sole corporate officer of Genometrica, he ran the business and managed the flow of funds for its research.

5.      On June 21, 2011, Ira Halperin, Esq. of Meltzer Lippe & Goldstein, P.C. advised me that Dr. Gorbovitski had retained him in connection with my request. All of my subsequent communications concerning Dr. Gorbovitski and his involvement with Genometrica were directed to or included Mr. Halperin.

6.      On June 29, 2011, I met with Dr. Gorbovitski at Mr. Halperin's office in Mineola, New York. Dr. Gorfinkel and Mr. Halperin were also present at the meeting, as was one of Mr. Halperin's partners. Mr. Halperin told me at the meeting that he represented both Dr. Gorbovitski and Dr. Gorfinkel. Mr. Halperin remained in attendance during the entire meeting. I interviewed Dr. Gorbovitski concerning: (i) the history of his and Dr. Gorfinkel's relationship with Genometrica as a shareholder, officer, and director; (ii) his salary, other cash

compensations, and 401K contributions from Genometrica; (iii) the various consultants that he directed Genometrica to employ; and (iv) the research conducted by Dr. Gorfinkel on behalf of Genometrica.

7.      Mr. Halperin also allowed Dr. Gorfinkel to answer questions concerning: (i) her work under the research agreements between Genometrica and the Foundation; and (ii) an equity interest in Genometrica that she alleged was promised to her.

8.      Dr. Gorbovitski and Dr. Gorfinkel also provided a limited number of documents to me via Mr. Halperin. These documents included Genometrica's: (i) corporate records and minute book; (ii) License Agreement with the Research Foundation of the State University of New York (the "Foundation"), dated July 1, 1999 (the "License Agreement"), and certain related research agreements between Genometrica and the Foundation, as amended and supplemented; (iii) lease agreements between Genometrica and  Dr. Gorfinkel for the use of office space in her house; (iv) an auto lease agreement between Genometrica and Smithtown Motors for a car used by Dr. Gorfinkel; (v) documents relating to Genometrica's 401K profit sharing plan; (vi) federal and state income tax returns from 2005 through 2010; (vii) profit and loss statements from July 2008 through May 2011; and (viii) available bank and credit card statements. I thoroughly reviewed these documents as part of my investigation.

9.      Based upon my corporate audit of Genometrica, I concluded, inter alia, that there was significant evidence of corporate fraud, breach of fiduciary duty, embezzlement, mismanagement, and waste of assets. As a result, Genometrica elected new directors and appointed new officers to manage the company.

10.     On August 10, 2011, I wrote to Dr. Gorbovitski and Mr. Halperin and notified them that Dr. Gorbovitski ceased to be a director and officer effective August 8, 2011 (see Doc.

No. 101-8 at p. 3). I further notified them that Dr. Gorbovitski's employment had been terminated. Id. I also demanded that Dr. Gorbovitski return all of Genometrica's property including, inter alia, all computers and other electronic devices. Id. I reiterated this demand *via* email on August 25, 2011 (see Doc. No. 101-6 at p. 16). To date, Dr. Gorbovitski has not returned any computers or other electronic devices belonging to Genometrica.

11.     The information and documents uncovered during the course of my investigation were used in formulating the initial Complaint that Genometrica filed in this matter on November 29, 2011 (see Doc. No. 1). That document speaks for itself and requires no interpretation. I provided a courtesy copy of the filed complaint to the Foundation *via* email on November 29, 2011 (see Doc. No. 27-13 at p. 2-3). My email was directed to Nancy Daneau, Deputy to the Vice President for Research and Research Foundation Operations Manager, Assistant Vice President of Research Development & Sponsored Programs at the Foundation. That initial Complaint did not contain any claims for patent infringement.

12.     On December 1, 2011, as required by Article 7.2 of the License Agreement, Genometrica, through counsel by letter, notified the Foundation that Dr. Gorbovitski, Dr. Gorfinkel, and their company, ABMM, were infringing on the patents licensed to Genometrica. I emailed this letter to Ms. Daneau. The letter also requested that the Foundation waive its right -- under Article 7.2 of the License Agreement -- to pursue a claim for patent infringement, so that Genometrica could directly pursue the claim without waiting 30 days from the notice as provided in the License Agreement (see Doc. No. 27-14 at p. 4-5).

13.     On December 2, 2011, a meeting was held between Genometrica and the Foundation at the Foundation's office. The Foundation was represented by Ms. Daneau, and outside counsel Peter Bernstein, Esq., of Scully Scott Murphy & Presser, P.C. Myself, Alex

Vayntrub, and Maria Labunskaya were present on behalf of Genometrica. The parties discussed, inter alia, Genometrica's allegations of patent infringement against Dr. Gorbovitski, Dr. Gorfinkel, and ABMM. At that time, the Foundation requested more information about the alleged infringement.

14.    On December 5, 2011, I emailed Mr. Bernstein a confidential attorney work product memorandum drafted by Ms. Tufariello. This memorandum outlined Ms. Tufariello's thoughts as patent counsel on the evidence that she reviewed with regard to patent infringement by Dr. Gorbovitski, Dr. Gorfinkel, and ABMM. A copy of that email, without the memorandum, appears at Doc. No. 27-15 at p. 2. The memorandum was shared with the Foundation on the basis of the Foundation's unity of interest with Genometrica on the patent-infringement claims. On December 9, 2011, Ms. Daneau emailed Genometrica and its counsel. In that email, Ms. Daneau stated that "[it] is not possible, at this time, for the [Foundation] to determine a basis for infringement" of the patents licensed to Genometrica, and that the Foundation was not "in a position to pursue infringement or other claims…." Ms. Daneau also stated that the Foundation had sought advice from counsel on the issue of patent infringement (see Doc. No. 27-16 at p. 3). The Foundation did not send Genometrica any other communication on the matter or any legal opinion written by outside counsel to the Foundation.

15.    Contrary to Defendant's suggestions, Genometrica's notification and work-product memorandum to the Foundation about infringement or a conflict of interest by the Defendants does not constitute a non-judicial patent infringement or conflict of interest proceeding before the Foundation or SUNY. Genometrica never requested or commenced any such proceedings at the Foundation or SUNY. And Genometrica has never filed a complaint with either the Foundation or SUNY. The only complaints that Genometrica has ever filed

against any of the Defendants are the initial Complaint that Genometrica filed with this Court on November 29, 2011 (Doc. No. 1), and the First Amended Complaint that Genometrica filed with this Court on April 2, 2012 (Doc. No. 20). Genometrica has never prosecuted any claims against Defendants in a non-judicial proceeding before the Foundation or SUNY.

16.     Genometrica has never questioned Defendants or witnessed Defendants defend themselves in such a proceeding at any time. Further, Genometrica has never seen any written determination or final judgment issued by the Foundation, or SUNY, or any other entity or person in connection with any alleged non-judicial proceeding.

17.     Between December 2011 and March 2012, I negotiated with Ms. Daneau about a proposed new research agreement between Genometrica and the Foundation. These negotiations have not, as of this time, resulted in a new research agreement.

18.     The First Amended Complaint added claims for, inter alia, patent infringement against the Defendants (Doc. No. 20). In its Memorandum of Decision and Order dated January 31, 2013, this Court held that Genometrica complied with the notice and other terms of the License Agreement, that it properly informed the Foundation of its claim of patent-infringement by Dr. Gorbovitski, Dr. Gorfinkel and ABMM, and that Genometrica had standing to bring claims of patent infringement against Defendants in this case (Doc. No. 43).

**WHEREFORE**, Defendants' Motion to Disqualify should be denied in all respects, and that the Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
        April 9, 2014

                                        Respectfully submitted,

                                        _____
                                        Richard G. Klein